417 P.2d 761

**Gordon BENNETT, Plaintiff and Respondent,**

v.

**ROBINSON'S MEDICAL MART, INC., Robinson's Sick Room Supplies, Inc., Defendants and Appellants.**

**No. 10487.**

Supreme Court of Utah.

Aug. 29, 1966.

Mark & Schoenhals, Jack L. Schoenhals, Salt Lake City, for appellants.

Brayton, Lowe & Hurley, John W. Lowe, Frank Diston, Salt Lake City, for respondent.

McDONOUGH, Justice.

Defendants appeal, seeking reversal of an adverse judgment; and the entry of judgment in accordance with their answer and counterclaim, or in the alternative, a new trial, contending that these rulings of the trial court are in error: 1) that the plaintiff was entitled to $1,436.76 in commissions for sales for the defendants in addition to what he had been paid; 2) that plaintiff was entitled to attorney's fees taxed as costs in the amount of $860; and 3) that the defendants had no cause of action on their counterclaim for commissions mistakenly paid the plaintiff, or for damages for the plaintiff's violation of a covenant not to interfere with the defendants' business or solicit its customers after leaving their employment.

In 1957 defendants hired plaintiff as a salesman of medical and sick room supplies which he continued until August 27, 1963. On the 26th day of August, 1961, plaintiff and defendants entered into a written agreement which in substance provided: 1) that plaintiff would devote the whole of his time to the job; 2) that defendants would pay certain comimssions on all sales credited to plaintiff; 3) that any proposed price variations must be approved by a properly authorized officer of the company; 4) that the contract could be terminated at the option of either party upon the giving of 15 days prior written notice; 5) that plaintiff, upon termination of his employment, would not interfere with defendants' business or in any way solicit customers of the company in the state of Utah within 6 months; and 6) that the said terms and conditions could be modified, annulled or extended by mutual agreement of the parties and that such shall be reduced to writing and become incorporated in and made a part of said contract.

Defendants informed plaintiff on or about June 27, 1963, that he would no longer be paid on a commission basis, but would receive a fixed salary of $800 per month, plus an automobile and the expenses of the latter. It was agreed at this time that plaintiff was to be paid com-

missions for all sales the plaintiff had been instrumental in making previous to the last day of June 1963. Shortly after that date plaintiff filed a claim for his commissions on all of the sales which he was aware had been completed up to that time and was paid therefor by check.

Plaintiff continued working for defendants until on August 27, 1963, when the parties agreed upon terminating his employment. He demanded payment of his fixed monthly salary then due him, plus additional commissions for sales allegedly made by him prior to the last day of June; and reimbursement of stock payments. Plaintiff was paid his fixed salary, but as to his latter two claims, defendants refused to pay.

Thereafter on September 1, 1963, plaintiff entered the employ of W. H. Bintz Co., a competitor of defendants. While employed by the Bintz Co. plaintiff within the six-month period following his employment with the defendants, did solicit customers with whom plaintiff had done business while in the employ of defendants.

The defendants contend that the trial court erred when it indicated at the beginning of the trial that the plaintiff had an "account stated" on his claim for commissions of $1,436.76 in addition to the amount claimed by him as of June 30, 1963. The evidence shows, and the trial court found, that after the change from payment by commission on June 30th, the plaintiff was to be paid on the salary basis, "but that sales previous thereto would be paid under the terms of the said contract." Further, that the plaintiff would be credited for sales which his efforts prior to that breakoff date had produced. It is to be noted that under the facts shown there could not have been a full settlement of account on that date, since all of the sales which plaintiff had worked on had not been completed and accounted for. The reference to the "account stated" by the trial court could only have the effect of shifting the burden of going forward with evidence on the issue.[1] The fact is that both parties were permitted and did present all of the evidence they had on this issue without any limitation or restraint. In view of the manner in which the issue in question was tried and resolved, we do not believe that the reference to "an account stated" was prejudicial in the sense that there is any reasonable likelihood that the result would otherwise have been different.[2]

1. As to account stated, see 1 Am.Jur. (Accts. & Accounting) § 21; Scoville v. Kellogg Sales Co., 1 Utah 2d 19, 261 P. 2d 933; Oberndorfer v. Moyer, 30 Utah 325, 84 P. 1102.

2. Utah Rules of Civil Procedure, Rule 61; Ivie v. Richardson, 9 Utah 2d 5, 336 P.2d 781; Bowden v. Denver & R. G. W. R. Co., 3 Utah 2d 444, 286 P.2d 240.

On the issue relating to the additional commissions awarded plaintiff these further questions must be considered:

1) Did the trial court correctly interpret the word "sales" as used in the contract, and did the plaintiff make "sales" entitling him to the additional commissions; and 2) did plaintiff's signing and cashing his final paycheck with a notation of "payment in full" thereon preclude his further recovery?

In ascertaining the meaning of words in a contract the intention of ·the parties is controlling and where it is susceptible of different interpretations extraneous evidence is admissible to show the intention.[3] Under their method of operation plaintiff was not credited with his sales until there was a delivery and a billing. It is not disputed that this could be some considerable time, in some instances as long as 90 days, after the order was given. The defendants admitted that the plaintiff was to be credited with all sales made to rest homes which he contracted regularly whether he actually took the order or not. There is a reasonable basis to support the view adopted by the trial court that other sales were treated in the same way, so that where the plaintiff had called on the customers and laid the groundwork, he was entitled to commissions on the sales. This was the basis of the award of $1,436.76 of additional commissions.

The defendants' contention that the plaintiff's cashing of a check which bore the statement that it was "Payment in full of the account stated below—Endorsement of check by payee is sufficient receipt" precluded his further recovery is not well founded. We have no disagreement with the proposition generally that where there is a dispute about a claim and one party makes an offer of settlement which is accepted and performed by the other, that constitutes an accord and satisfaction of the claim.[4] But that rule does not govern under the particular facts of this case. Plaintiff testified that upon receipt of the check he went to the defendants and discussed the matter, telling them that he did not regard it as payment in full and the dispute between the parties over the matter is what precipitated this lawsuit. He was unquestionably entitled to the money he did receive; and the dispute was as to whether he had more coming. The dispute negates any accord; and under the facts found by the trial

3. Barrus v. Wilkinson, 16 Utah 2d 204, 398 P.2d 207; Charlton v. Hackett, 11 Utah 2d 389, 360 P.2d 176; Western Development Co. v. Nell, 4 Utah 2d 112, 288 P.2d 452.

4. Browning v. Equitable Life Assur. Soc., 94 Utah 532, 72 P.2d 1060, reh. den. 94 Utah 570, 80 P.2d 348; and see Cheney v. Rucker, 14 Utah 2d 205, 381 P.2d 86; 1 Am.Jur.2d (Accord & Satisfaction) § 1.

court the plaintiff could not equitably be precluded from asserting his further claim.[5]

■ In regard to the defendants' charge that they should have been allowed recovery on their counterclaim for commissions allegedly paid by mistake to the plaintiff, these observations are pertinent. The first is that they failed to meet their burden of proof to persuade the trial court that such mistaken payment had been made. The second, which is supportive of the first, is that the evidence shows that the defendants had ample opportunity to ascertain the correctness of the account, and in fact one of them did double check the validity of the claims before making payment.

■ The observation just made above relating to burden of proof also applies to the defendants' contention that they should have prevailed on their claim against plaintiff for breach of his covenant not to interfere with their business nor solicit their customers after he left their employment. It was incumbent upon them to prove both the breach and damages flowing therefrom. In this connection there was evidence that the defendants' president made certain representations to the plaintiff which plaintiff could reasonably rely on as indicating that they were no longer concerned with the restrictive covenant. Upon surveying the whole evidence, it appears that there was justification for the trial court refusing to find for the defendants on that issue.

■ We are not persuaded that the trial court transgressed its prerogative or abused its discretion when it awarded the plaintiff attorney's fees in the amount of $860. Section 34-9-1, U.C.A. 1953, provides for the recovery of attorney's fees in suits for wages commenced by "a mechanic, artisan, miner, laborer, servant or other employee" if it is established that "the amount sued for is justly due, and that demand in writing was made for a sum not to exceed the amount found due".[6] The fact that plaintiff was paid on a commission basis does not preclude him from coverage by this section. Section 34-10-3(b), U.C.A. 1953, defines wages as follows:

> " 'Wages' shall mean all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, *commission basis* or other method of calculating such amount." (Emphasis added.)

Plaintiff was awarded the amount of commissions he had demanded. The reasonableness of the attorney's fee awarded was

5. See Dillman v. Massey Ferguson, Inc., 13 Utah 2d 142, 369 P.2d 296.

6. Pierce v. Anagnostakis, 15 Utah 2d 418, 394 P.2d 74.

supported by testimony adduced at the trial.

Upon our survey of the evidence in the light most favorable to the findings of the trial court,[7] and in accordance with the discussion herein, it is our conclusion that the judgment should be affirmed. Costs to plaintiff (respondent).

HENRIOD, C. J., and CROCKETT and CALLISTER, JJ., concur.

WADE, J., heard the arguments, but died before the opinion was filed.

7. Ivie v. Richardson, 9 Utah 2d 5, 336 P.2d 781; Gibbons & Reed Co. v. Guthrie, 123 Utah 172, 256 P.2d 706.