437 P.2d 202

Henry S. HINTZE, M. Eugene Williams and Archie I. Bess, Plaintiffs and Respondents,

v.

Eric J. SEAICH, dba Eric J. Seaich Company, Defendant and Appellant.

No. 10961.

Supreme Court of Utah.

Jan. 30, 1968.

J. Grant Iverson, of Moffat, Iverson & Taylor, Salt Lake City, for appellant.

Del B. Rowe, Salt Lake City, for respondents.

ELLETT, Justice:

The respondents, former employees of the appellant, filed this action to recover wages and commissions claimed to be due them. There are really three separate and distinct cases involved herein, and the discussion will be devoted first to the Hintze claim.

In his original complaint Mr. Hintze claimed that between January, 1959, and April, 1965, he earned commissions and/or wages in the amount of $800 and that the same had not been paid. After the answer was filed, Mr. Hintze amended his complaint and revised his claim upward and demanded $5,000 as the amount due him.

At pretrial the issues were set out as follows:

THE COURT: The parties agree that the plaintiffs were employed by the defendant and were to be paid on a basis of earned commissions.

The employment agreement was not in writing and there is an issue for the trial court as to the nature of the employment agreements. After the employment agreements have been determined upon trial, then the only issue remaining is what commissions, if any, are [sic] owing to the plaintiffs.

The court at pretrial suggest [sic] to the trial court that a determination of the employment agreement be first made. After said determination is made, it is suggested that the trial court give due consideration as to whether the trial court wants to determine the amount due and owing or in the alternative if the matter should be referred to a Master.

The burden was upon Hintze to prove by a preponderance of the evidence the amount to which he was entitled, and in order to do that, he of necessity had to convince the trial court that he was entitled to it pursuant to the terms of his contract. In that regard he said that the contract was oral and that he was to get 60 percent of the *profits* on the orders he sold.

The orders obtained were not filled by the defendant here in Salt Lake City but were sent back East, and the cost of the merchandise furnished to the customer was billed to the defendant. The profit was the difference between the selling price to the customer and the amount paid to the manufacturer for the merchandise. No account was taken of overhead expenses involved.

Mr. Hintze admitted that he got only one half of the 60 per cent of the estimated profit when he turned in the order to the defendant, and later on he usually got the remaining half. He claims that he did not always get the other half of the commission, and it is this unpaid part which gives rise to his cause of action.

The appellant, Mr. Seaich, says that the oral agreement was as claimed by Hintze: 60 per cent of the *profits* with an advance of one half of the commission being paid when the order was turned in, the remaining half to be paid, with adjustments up or down for errors in the estimated profit, when the customer paid the account and the defendant had received the bill from the supplier. He further claimed that if the order was cancelled or if the account could not be collected, then there was no profit, and Mr. Hintze would be charged back for the advance made on the estimated profit at the time the order was turned in.

Mr. Hintze presented to the court certain listed orders for which he had not been paid in full, and the court gave judgment to him for the sum of $4,319.45 with interest thereon. No proof was offered by Hintze as to whether collections could be made upon the various orders. He simply claims that he is entitled to the full commission.

Mr. Seaich called his bookkeeper, who testified regarding the uncollectible accounts. She stated that a number of the debtors had taken bankruptcy, others had died, some had moved, some no longer were in business, and some had refused the merchandise because it was not what they claimed they had ordered. Various other reasons were given for inability to collect each individual account.

The trial court made no finding as to what the terms of the contract were and apparently took the testimony of Hintze that a certain amount was due and owing on certain orders. This testimony was but a conclusion stated by Mr. Hintze with no factual background to support it. It is obvious that one must know what the terms of the contract were in order to be able to determine what amount, if any, would be due plaintiff. All parties say that commissions were to be paid upon *profits*. Plaintiff apparently claims a commission on all sales, and he complains because the books of the defendant were not closed out on certain sales until after this action was commenced.

It appears that in making an accounting for the benefit of Mr. Hintze the defendant wrote off a number of old accounts and charged back to Mr. Hintze's account certain commissions to which plaintiff would have been entitled had the account been collected.

In making the opening statement plaintiff's counsel stated:

* * * the reason he didn't get paid on those commissions is that Seaich failed to collect on those accounts, and if he didn't get the money on these accounts he didn't pay his men.

\* \* \* \* \* \*

* * * now the whole crux of the problem in the Seaich Company is their

failure to collect on these items sold by these salesmen. * *. *

The plaintiffs called one Rutherford, who also had been a salesman for the defendant, who testified as follows:

Q You were on a 50–50 basis, 50 per cent of the profit was to be paid to you?

A Yes. On my deal it was 50–50.

Q Were you paid half of your estimated 50 per cent when you turned in the order?

A Yes, I was.

Q And when were you paid the last half?

A Well, I got most of the last half when the money came into the office.

Q Yes.

A It might have been put down here time of the invoice date, I don't know for sure, but it seems like when the money came in the office.

Q When the account was collected in full?

A Yes, sir.

It does not comport with reason to believe the court could have found that the salesmen would be entitled to a full commission upon turning in an order when all parties say the commission was based upon *profits*.

The defendant prepared an exhibit which listed all orders taken by Mr. Hintze, the dates thereof, the number of the order, the payments made thereon for the first half of the commission, the time of such payment, and also the payments made for the second half of the commission with the amount of overpayments and underpayments thereof, if any there were. It also included a list of all checks given Mr. Hintze, the dates, the amounts thereof, the deductions such as F.I.C.A., withholding (taxes), miscellaneous, etc., and tendered the records in support thereof. Counsel for the plaintiffs objected, as shown by the following colloquy:

MR. ROWE: I don't think we need a truckful of those forms. We are pretty well in agreement as to the orders and commissions earned. The thing we are going to argue over is the amount they have paid him and they want him to pay them back, and also this last column that she admits they underpaid him. I think generally we don't need to bring all these orders in. I think they are pretty well correct, the first two columns here. I don't see the necessity of having a truckful of records.

MR. IVERSON: With that stipulation we won't bring them in, but that one box contains about five-sevenths of them. The others are very small.

MR. ROWE: I think the only problem we have with this whole mess is that they didn't do their job collecting on these amounts, and also she has made several errors in calculating these men's commissions.

The court, despite this statement, found that the recapitulation as shown by the exhibit was not correct.

Mr. Hintze was asked about an exhibit which he had prepared and in that connection gave the following testimony:

Q Concerning this record here, do you have any reason to believe there are orders that are not in this record?

A Yes, I do.

Q And do you have any idea about what orders they might be and whether they were paid?

A No, I don't, because we didn't receive a copy of the sales orders as they were written from the Seaich Company. I mean, when an order was written, we didn't receive a copy. All of the copies were retained by the Seaich Company, and I have no record of knowing what orders were sold and have no way of knowing what was not included in there, except I have, through investigation, found one or two that were not listed.

Further testimony of Mr. Hintze revealed that he did not know whether he had money coming or not, as follows:

Q Let me go back to the beginning. Have you totaled, order by order, all of the commissions to which you have been entitled?

A I have no way of knowing all of the commissions to which I have been entitled because I do not have a record of every sale that I made.

Q Have you totaled all of the commissions you are entitled to according to her [defendant's] statement?

A Yes.

Q Have you? Then you have totaled all of the checks that she has paid to you by her statement, have you?

A I have.

Q Is there any difference?

A Yes.

Q How much?

A I said about $4,000.00 as near as I can remember.

The compilation furnished by the defendant did not show a difference of $4,000. In fact, it showed as total credits and commissions earned by Hintze the sum of $44,388.13 and the total amount paid to him to be $44,720.36.

There were presented in evidence 508 sheets of paper, many of which contained approximately 30 entries. Since the plaintiff kept no record of his own account, it is difficult to see how he can make out his case other than from the books and records as kept by the defendant.

Prior to 1965 the bookkeeper of Mr. Seaich would show on each check given to the salesmen the order numbers which were covered by that check. A change in bookkeepers caused a change in the method of keeping up with each order individually. It will be noted from the exhibits in the

record that the commissions due on the various orders ranged from as little as fifteen cents to as much as several hundred dollars, with a great majority being for less than $20. It appears that when the defendant's bookkeeper quit listing the particular commissions covered by a check, Mr. Hintze quit giving the defendant any credit for the payment. Mr. Hintze was asked questions and gave answers thereto as follows:

Q (By Mr. Iverson) You didn't put in, for 1965, what you received and what you earned, did you?

A No, I did not.

Q Why?

A Because at the beginning of 1965 the bookkeeping procedure was set up so they no long submitted, with a check, what they pay, and so we did not know, with the checks we received in 1965, exactly what was being paid.

While Mr. Hintze testified that some $4500 was due and owing him, his testimony should be considered in the light of his answers made to interrogatories propounded to him. In his sworn answer thereto, he said that as of September 18, 1964, there was due and owing to him as commissions the items set out in five pages of detailed orders as attached to the answers in which he gave the amount due on each of them. The total of those orders amounts to $1,884.73. He then answered that since September 18, 1964, he had earned commissions as set forth in seven pages of orders as attached to the answers, the total of which was $2,580.16, making a total of $4,464.89, which would have been due him if he had not been paid any money after September 18, 1964. He further made answers to interrogatories that since September 18, 1964, the defendant had paid him $4,281.84. This would leave a balance due and owing him, according to his answers to interrogatories, in the sum of $183.05.

In addition to the above, there was a special account known as the Avery account on which Mr. Hintze alone kept the records. When he left the company, he took those records with him and claims by his testimony that the defendant owes him five or six hundred dollars on that account. The exhibit prepared by the defendant shows that from the records kept by Mr. Hintze $690.93 would be the amount due on the Avery account.

█ It seems obvious to us that Mr. Hintze is trying to collect on specified orders for which he says he was not paid and that he has not applied any of the $4,281.84 which he received since September 18, 1964, to any of these old accounts. It would seem to us that the total amount of commissions earned by Mr. Hintze less the payments made thereon would be the amount if any to which he would be entitled by way of judgment. We do not

think he has sustained his burden so as to entitle him to the judgment rendered.

■ What has been said with reference to the Hintze case applies equally to the claims of Mr. Williams and Mr. Bess. However, as to Mr. Williams there is a claim of an accord and satisfaction in that after this action was commenced a check in the amount of $81.94 was sent by the defendant to him stating, "This is the balance of your account in full." Mr. Williams cashed this check and denies that the cashing thereof constitutes an accord and satisfaction.

We agree with him. In 1 Am.Jur.2d, Accord and Satisfaction § 15, it is said:

The principle that an offer of payment of a lesser sum in discharge of a greater will result in a discharge of the indebtedness only if the offer is made upon the condition that the creditor accept the offered sum in full satisfaction of the indebtedness, finds frequent application in the case of checks and other remittances. The mere fact that the creditor receives a check or other remittance from his debtor for less than the amount which the creditor claims, with knowledge that the debtor claims to be indebted to him only in the amount paid, does not result in an accord and satisfaction; the debtor must also indicate that payment is offered upon condition that it be accepted in full satisfaction or not at all, or the circumstances must be such as to clearly indicate to the creditor that it was sent with that intention. Consequently, where a check is tendered, even though it accompanies an account, if there is no expression of the condition that it must be accepted in full payment, the acceptance of the check does not constitute an accord and satisfaction, as no agreement to that effect can be implied from the transaction. So too, the mere payment by a debtor of an amount denominated "a balance" upon an account rendered and its retention by the creditor does not constitute an accord and satisfaction.

In order that the acceptance of the check or remittance shall operate as a full discharge, the condition that it is to be accepted in full satisfaction of the pending claim or obligation must be expressly made.

In Hudson v. Yonkers Fruit Company, a New York Court of Appeals case, found at 258 N.Y. 168, 179 N.E. 373, 80 A.L.R. 1052, it is said:

Two forms of accord and satisfaction of unliquidated claims are to be discovered in the books. One is where there is a true assent to the acceptance of a payment in compromise of a dispute, or in extinguishment of a liability uncertain in amount. [Citations omitted.] The

other is where the tender of the payment has been coupled with a condition whereby the use of the money will be wrongful if the condition is ignored. See Bennett v. Robinson's Medical Mart, Inc., 18 Utah 2d 186, 417 P.2d 761.

■ In addition to the law as stated above being against the defendant, accord and satisfaction is an affirmative defense which must be pleaded in the answer ordinarily in order to be raised. Utah Rules of Civil Procedure, 8(c). F.M.A. Financial Corporation v. Build, Inc., 17 Utah 2d 80, 404 P.2d 670. The defendant did not plead accord and satisfaction in this matter.

In the claim of Mr. Williams, it is clear that there was no meeting of the minds that the acceptance of the check was to be in complete settlement of the dispute. The voucher attached to the check did not state that the money was to be returned if it was not so accepted. We think the trial court was correct in holding that there was not an accord and satisfaction in connection with Mr. Williams.

The judgment is reversed as to each plaintiff, and the case is remanded for further proceedings not inconsistent with this decision. Costs to appellant.

CALLISTER, TUCKETT, and HENRIOD, JJ., concur.

CROCKETT, Chief Justice (dissenting).

Accounts which are properly kept are competent evidence. But their credibility is subject to the judgment of the fact trier the same as other evidence. It may depend somewhat on the circumstances, but generally the credit of a witness's testimony would not necessarily be improved, and certainly not insured, by the fact that it is reduced to writing. Accounts are as subject to error, change or falsification to suit a purpose as is any other evidence. The main opinion adequately states the position of the defendant. This being a lone dissent, I shall not belabor the detail, but record these observations.

In this controversy, viewed in broad perspective, we have on the one side the testimony of the plaintiff, which if standing alone, would support the judgment. On the other side, there are the accounts of the defendant. There are aspects of the evidence of both sides which may be regarded as tending to its credit or discredit. As to the latter, this includes the fact of self-interest and that there were shown to be some discrepancies and that some changes had been made in the accounts. See Page v. Federal Security Insurance Company, 8 Utah 2d 226, 227, 332 P.2d 666. The trial court, whose prerogative it is to judge the credibility of the evidence and find the facts, chose to believe and found in accordance with the plaintiff's evidence. On that basis the judgment should be affirmed.