**TATES, INC., Plaintiff and Appellant,**

v.

**LITTLE AMERICA REFINING CO., a corporation, dba Little America, Defendant and Respondent.**

No. 13681.

Supreme Court of Utah.

May 15, 1975.

Keith E. Sohm, Salt Lake City, for plaintiff and appellant.

Richard L. Bird, Jr., and Gregory L. Seal, Richards, Bird & Kump, Salt Lake City, for defendant and respondent.

CROCKETT, Justice:

Tates, Inc., sued defendant, Little America for $3,407.26 as the balance owed on a 45-passenger bus which it had sold the defendant for a contract price of $28,514.37. Defendant answered: Not indebted; that in connection with making its last payment there had been an accord and satisfaction of the entire debt; and also asserted a counterclaim for $5,500 damages for failure to deliver the bus within the agreed time.

At the conclusion of the plaintiff's evidence defendant moved for dismissal. The trial court reserved ruling thereon; and after defendant had presented its evidence, the court granted the motion to dismiss on the ground that there had been an accord and satisfaction. Plaintiff appeals attacking that ruling.

■ On appeal we apply the traditional rules of review: we assume that the trial court believed those aspects of the evidence which may be deemed to support his finding and judgment; and we survey the evidence in the light favorable thereto.[1]

The defendant operates the Little America Complex in western Wyoming. Pursuant to prior negotiations it entered into an agreement on January 21, 1972, to purchase a 45-passenger bus from plaintiff Tates, Inc. of Salt Lake City. It was to be used to transport personnel between Little America and Green River, Wyoming.

Plaintiff had indicated to defendant that the bus chassis manufacturer had reported that it could make delivery in about 45 days and that the body manufacturer would require about an equivalent time, so that delivery could take place approximately 90 days after receipt of the order. However, after the order was placed it

was learned that the chassis manufacturer had encountered difficulties and that there would be a delay in the delivery of the bus. Meanwhile, plaintiff Tates supplied a loaner bus to Little America without charge. When plaintiff learned that the chassis was completed in the fall of 1972, it sought a down payment of $10,000 from Little America. Responsive to this, Little America, on November 11, 1972, gave a check for that amount as a down payment on assurances from Mr. Robert Knaus, Tates' manager, that he felt confident that the bus could be completed and delivered by the end of November. It is from and after that date that Little America has asserted it had difficulties with the loaned bus; and that it incurred expenses in repairing it and for the rental of a substitute bus, aggregating the $3,407.26 which it claims as damages in offset of the purchase price.

■ In regard to the disputed issue here: whether there was an accord and satisfaction of the defendant's debt, there are some foundational principles to be considered. Ordinarily, the payment of part of a debt does not discharge it; and this is true even though the paying debtor exacts a promise that it will do so. The reason for this is that in making the part payment, the debtor is doing nothing more than he is legally obligated to do, and therefore he gives the creditor no consideration for the promise that the part payment will be accepted to discharge the entire debt. However, there may be varying circumstances in which the debtor is induced by the request of the creditor to make payment in some manner other than he is obligated to do; and if he is so induced, and thus suffers some legal detriment in making the payment, there is consideration for the promise and the debt is discharged.

■■ One of such variations is "accord and satisfaction" relied upon by the defendant here and found by the trial court. This doctrine requires that there be a dis-

1. Memmott v. United States Fuel Co., 22 Utah 2d 356, 453 P.2d 155.

pute or uncertainty as to the amount due and that the parties enter into an agreement that the debtor will pay, and the creditor will accept, the lesser amount as a compromise of their differences and in satisfaction of the debt.[2] The authorities dealing with this problem, including those cited and relied upon by the defendant, uniformly affirm that it must clearly appear that the parties so understood and entered into a new and substitute contract. To state the matter in traditional contract language: that there was a definite meeting of the minds on such an agreement. Further; when a party asserts that his debt has been discharged by paying a lesser amount in accord and satisfaction of the entire debt, that is an affirmative defense upon which he has the burden of proof.[3]

 The defendant's advocacy of an accord and satisfaction is based on three propositions: a conversation; a follow-up letter; and the defendant's sending and the plaintiff's cashing of a check. We treat them in that order.

The conversation took place after the delivery of the bus on January 16, 1973. We take the version given by defendant's managing officer, Mr. Kenneth Knight, who, testifying on direct examination, stated:

Q. You wrote a letter on February 12, 1973, which is exhibit 6–D; that's your signature, isn't it?

A. That is.

\* \* \* \* \* \*

Q. Can you remember whether there were conversations before the letter was prepared before that date, February 12, or what they were on that date?

A. I believe we had a phone conversation prior to that date and I asked Mr. Knaus if I could meet with him . . . I believe it was on February 12th or thereabouts that he came to my office

and we discussed the matter of the expenses.

Q. Will you relate the conversation . . . ?

A. Yes . . . I explained that I was taking the November 30th date because that had been the date that was promised in association with the $10,000.00 check; and that I had accumulated my expenses since that date and I enumerated those and told him that these were expenses that we had incurred. And he said that *they should be put down* and *they would go back to the manufacturer* so they—*to see what they could do about it and that we would go from there*.

Q. Did you . . . exhibit any of the documentary support for those expenses?

A. *I am not sure whether or not I actually went through the bills or not.* I can't recall. They were attached to my letter of February 12th.

Q. Mr. Knaus said in response to your accumulated expenses and your telling about it that *he would go back to the manufacturer to see what could be done about it* and you could *go from there*, isn't that it?

A. Right.

It is obvious from Mr. Knight's own statements about the claimed expenses being "put down and they would go back to the manufacturer . . . to see what they could do about it and we could go from there" that the conversation could not fairly be regarded as any definite agreement that Tates would absorb those expenses and accept the defendant's account, later to be furnished, as the damages it claimed as an offset on the purchase price of the bus.

---

**2.** Dillman v. Massey-Ferguson, Inc., 13 Utah 2d 142, 369 P.2d 296; Stanley Thompson Liquor Co. v. Southern Colorado Merc. Co., 65 Colo. 587, 178 P. 577, 4 A.L.R. 471.

**3.** Hintze v. Seaich, 20 Utah 2d 275, 437 P.2d 202; Rule 8(c), U.R.C.P.

With respect to the letter, defendant places reliance on it in its brief thus:

> Defendant's letter (Exhibit 6–D) *made very clear* the fact that defendant's check (Exhibit 7–D) was offered in full satisfaction of the disputed claim.
>
> . . .
>
> In that regard the letter stated:
>
> \* \* \* \* \* \*
>
> At the time we made a partial payment to you in October we were assured that delivery would be accomplished by the end of November.
>
> From the end of November until delivery of the bus we experienced periods where the loaner bus was non-operable. These bills are attached *for your information* as follows:

| | | |
|---|---|---|
| December 1–7 | 18 trips at $25.00 | $ 450.00 |
| December 7– | | |
| January 2 | 3 trips daily at $22.50 | 1,822.50 |
| January 3 | 2 trips at $22.50 | 45.00 |
| January 8–17 | | 675.00 |
| January 28–30 | | 175.00 |
| Invoice for Repair of loaner bus | | 239.76 |
| | Total to be deducted from Invoice | $3,407.26 |

> Sincerely, (Signed)

Neither do we see in the letter any clear indication to Tates that it was being required to agree that payment of the purchase price of the bus, less the expenses listed in the letter, would satisfy the entire debt. All that can be claimed for the letter is that it supplied the information Mr. Knaus had requested, to be used in the mutual endeavor to get some adjustment from the factory for the delay in the delivery of the bus. (all emphasis ours)

Concerning the check: five days after the conversation and the letter just discussed, on February 17, 1973, defendant sent a check for $15,107.11 to the plaintiff, which the latter cashed and credited to the defendant's account; and on February 21,

billed the defendant for the remaining $3,407.26. It is significant that it is not shown that either the check or the attached voucher stated that it was "payment in full" for the debt, or words of that import.[4] The check must necessarily be in the possession of the defendant, but it was not presented in evidence. Defendants rely on the fact that the attached voucher had the words: "The below check is made in payment of the following" and that thereunder was listed:

| | |
|---|---|
| [Price of bus] | 28,514.37 |
| Advance payment | (10,000.00) |
| | 18,514.37 |
| Less extra costs incurred by because of extended delay in delivery of bus | |
| | 3,407.28) |
| | 15,107.11 |

The proposition upon which the claimed accord and satisfaction appears to rest is that under the total circumstances described above, the plaintiff either knew, or should be deemed to have known, that the check was being offered in full satisfaction of the debt.[5] But such a supposition is not sufficient to meet the requirements of the rule set forth in the authorities hereinabove referred to: that to bind the plaintiff to a new contract, it must be made to appear that it was clearly so understood and agreed.

On the basis of what has been said above, it is our opinion that when the total circumstances are considered together, what was done fitted into the pattern of the parties' mutual effort to get an adjustment from the factory, but that it cannot fairly and justly be concluded that there was any point at which it was clearly brought home to the plaintiff that it was agreeing to accept the check, less the claimed expenses listed by the defendant, as a full settlement for the purchase price

---

4. Whether the words "in full payment" or words of similar import show an accord may depend on the particular circumstances. See 1 Am.Jur.2d Accord and Satisfaction. Section 19, p. 318.

5. See authorities cited in footnotes 2 and 3 above.

of the bus. Accordingly, the finding of an accord and satisfaction and the judgment based thereon are in error.

Other matters assigned as error have been considered and are deemed to be without merit.

The judgment is reversed. Costs to plaintiff (appellant).

HENRIOD, C. J., and ELLETT, TUCKETT and MAUGHAN, JJ., concur.