Sterling B. CANNON et al., Plaintiffs and Respondents,

v.

STEVENS SCHOOL OF BUSINESS, INC., Defendant and Appellant.

No. 14378.

Supreme Court of Utah.

March 9, 1977.

Bryce E. Roe of Roe & Fowler, Salt Lake City, for defendant and appellant.

Del B. Rowe, Salt Lake City, for plaintiffs and respondents.

MAUGHAN, Justice:

Plaintiffs brought this action seeking recovery under a contract of employment. The trial was to the court. Judgment was

rendered in favor of plaintiffs. Defendant appeals, prays reversal and remand; with directions to grant the relief prayed in its counterclaim.

We affirm the trial court. Costs to plaintiffs.

Plaintiffs were employed by defendant, to engage "aggressively in student recruitment." Defendant operated two business colleges, one in Salt Lake City, and one in Ogden, Utah. The terms of employment were set forth in a written contract, drawn by defendant. Those provisions relevant to this dispute were contained in sections VII and IX, of the agreement.

VII. To accept as compensation under this employment agreement commission on tuitions received by the college from all approved enrollments credited to you under the terms of this employment agreement as follows: 13½% for all enrollments taken where the current address is in Weber, Salt Lake or Davis Counties, and 15% for all enrollments taken outside these three counties. An additional 5% incentive commission will be credited to your commission account at year end in addition to the commissions shown above for all tuition income over $100,000.00 paid by your students during any calendar year (January 1st to December 31st).

IX. In the event this agreement is terminated by either party and there exists a deficit balance in your commission account, the commission earned from the date of termination forward will be applied toward the deficit balance until that balance has been satisfied. Credit balances on this commission account after termination can be drawn quarterly, the draw to be made during the last month of each quarter, permitting the College to complete the accounting statements and reports for that quarter.

Since plaintiffs were soliciting enrollments over a broad geographical area, they were required frequently to obtain lodging and meals away from home. Defendant would make advancements of $1,000 per month to plaintiffs, to assist in defraying these soliciting expenses. Under its bookkeeping system defendant entered these advances as accounts receivable. Monthly, defendant issued a computer printout, to its salesmen. It showed commissions earned, tuition refunds, other adjustments; and the balance in the commission account at the end of the month.

On December 17, 1973, defendant entered into a contract with L.D.S. Business College located in Salt Lake City. In exchange for $200,000, defendant agreed to settle an asserted anti-trust action against the L.D.S. Business College. Defendant also agreed to discontinue the operation of its school in Salt Lake City, and not to compete with (or sell its assets to anyone who would compete with) L.D.S. Business College; for a period of five years. Defendant further covenanted to use its best efforts to influence and encourage its present students to enroll at the L.D.S. Business College; to refer all inquiries concerning present or future educational needs of prospective students to L.D.S.; to grant immediate and exclusive access to all files and records of prospective students, student directories, and mailing lists; and to deliver the permanent records of all of defendant's students of the Salt Lake City school from commencement of its operation to present time. In conformity with this agreement defendant closed its school in Salt Lake City on December 31, 1973.

Defendant sold its Ogden school to the Robinsons on December 31, 1973, for a basic purchase price of $267,000. In addition Robinsons agreed to pay certain accounts receivable, viz., the accounts of plaintiff Cannon for $5,544.06, and plaintiff Van Luyk, for $3,069.07.

Defendant conducted no further operations at either school after December 31, 1973; consequently no further tuitions were collected. Plaintiffs had fully performed the services which they were required to render in order to be entitled to compensation under the employment contract at the time a prospective student was deemed by defendant an "approved enrollment." Plaintiffs contend that they were entitled

to compensation for services rendered and that defendant's voluntary actions which prevented its performance in accordance with the terms of the contract constituted a breach entitling plaintiffs to damages. The trial court granted judgment to the plaintiffs, and defendant does not challenge the measure of damages.

On appeal, defendant contends the trial court erred in its determination that plaintiffs were entitled to compensation under the contract after defendant ceased to operate the schools. It is conceded there was no provision in the contract governing the rights of the parties, in the event defendant terminated operation of the schools. Defendant asserts it did not breach the contract, because its duty of performance was excused. This assertion is predicated on the theory the terms of the contract create an implied condition precedent, viz., defendant must be operating the business if it is to be required to perform. Defendant cites the provision plaintiffs' compensation was based on "tuitions received by the college from all approved enrollments." It urges it had no duty to pay, because it received no tuitions after December 31, 1973. Its contention is there was no breach of contract, because there was no duty to perform, because its duty to perform was subject to an implied condition precedent; viz., the continued existence of the school, and receipt of tuition.

■ Defendant would not be entitled to · prevail even if its assertion of an implied condition precedent were accepted.

. . . Where, as here, the compensation agreed to be paid for services rendered is to be paid out of a fund to be collected by the party for whom such services were rendered, there is an implied obligation on the part of the promisor to exercise reasonable diligence to collect the fund from which the promisee may be compensated for such services; and, in default of the exercise of such diligence, payment may become due without the performance of the condition. [Citations] As stated by Professor Williston, it is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance of a condition upon which his own liability depends, he cannot take advantage of that failure.[1]

By its voluntary act, defendant placed performance of its obligation beyond its control, i. e., discontinuing the schools so it could not collect the tuitions, and pay the percentages to which plaintiffs were entitled.

■ A person cannot avoid liability for the non-performance of its obligation by placing such performance beyond his control by his own voluntary act.[2] Furthermore, no one can avail himself of the non-performance of a condition precedent, who has himself occasioned its non-performance.[3]

An additional contention is the claims of plaintiffs, Van Luyk, Teeples, and Maxwell should have been found discharged, because of an accord and satisfaction. Defendant sent checks to the three aforementioned plaintiffs. On the checks was the following:

Endorsement of this check constitutes acknowledgement of the termination effective 12–31–73, of my Employment Agreement with Stevens Henager College dated [date], and constitutes final and full payment by Stevens Henager College to me in settlement of any and all obligations due me from Stevens Henager College.

Van Luyk and Maxwell, prior to negotiating the checks, added "endorser in no way agrees." Teeples cashed the check, without

1. *Navajo Freight Lines, Inc. v. Moore*, 170 Colo. 539, 463 P.2d 460, 462 (1970); also see 5 Williston On Contracts, 3rd Ed.—Jaeger, § 677, pp. 224–233.

2. *Pacific Venture Corporation v. Huey*, 15 Cal.2d 711, 104 P.2d 641 (1940).

3. *Kahili, Inc. v. Yamamoto*, 54 Haw. 267, 506 P.2d 9, 12 (1973); Restatement, Contracts, § 295.

qualifying statement. According to defendant, its sending the check constituted an offer, and the act of plaintiffs in cashing the checks was an acceptance, binding upon them. The trial court ruled there was no accord and satisfaction, citing elements which negated the existence of an agreement and consideration, between the parties.

■ An accord and satisfaction is a method of discharging a contract, or settling a claim arising from a contract, by substituting for such contract or claim an agreement for the satisfaction thereof, and the execution of the substituted agreement.

To constitute an accord and satisfaction there must be an offer in full satisfaction of the obligation, accompanied by such acts and declarations as amount to a condition that if it is accepted, it is to be in full satisfaction, and the condition must be such that the party to whom the offer is made is bound to understand that if he accepts it, he does so subject to the conditions imposed. . . . The accord is the agreement and the satisfaction is the execution or performance of such agreement. . . .[4]

■ This new, substitute agreement must be founded upon a legal consideration and must be consummated, by the assent or meeting of the minds of the parties, to the agreement. Where we deal with an unliquidated or disputed demand, consideration may rest on the settlement of the dispute, e. g., the parties agree the debtor will pay and the creditor will accept an amount as a compromise of their differences and in satisfaction of the claim.[5]

■ At the time plaintiffs cashed their checks, the court found, they were unaware of their rights, or that their claims were in dispute. They were unaware of the nature of the contracts defendant had entered into with the third parties, and as a consequence defendant had breached the employment contracts. Furthermore, neither by the statement on the check or by other communication did defendant express the intention the payment was offered upon the condition it be accepted in full satisfaction, or not at all. The ruling of this court in *Hintze v. Seaich* [6] is applicable herein.

> . . . it is clear that there was no meeting of the minds that the acceptance of the check was to be in complete settlement of the dispute. The voucher attached to check did not state that the money was to be returned if it was not so accepted. We think the trial court was correct in holding that there was not an accord and satisfaction . . . .

Defendant's final contention is the trial court erred in denying its claim for a set-off to the amounts awarded plaintiffs Van Luyk and Cannon. This asserted set-off was the amount in the two accounts receivable which represented advancements to these two plaintiffs.

■ In defendant's agreement of sale of the Ogden school, to the Robinsons, the Robinsons were required to pay for these specific accounts. The court reasoned this indebtedness to defendant had already been discharged. Mr. Robinson testified he did not pay plaintiffs (whom he employed) a commission on the old students who continued in the school after he purchased it. He further stated, under his contract with defendant, he was not required to remit to defendant, any of the tuition for re-enrollees. Additionally, he testified he did not require Cannon and Van Luyk to reimburse him, for paying, to defendant, the accounts receivable. When this law suit was initiated, Robinson refused to assign these accounts to defendant, as requested. Defendant's sole basis for claiming the right of off-set is predicated on Robinson's testimony, viz., the source of the funds he used to pay the accounts receivable was the commissions on tuitions of re-enrollees; which would have been payable to plaintiffs, if

**4.** 1 Am.Jur.2d, Accord And Satisfaction, § 1, pp. 301–302.

**5.** *Tates, Inc. v. Little America Refining Co.,* Utah, 535 P.2d 1228 (1975).

**6.** 20 Utah 2d 275, 283, 437 P.2d 202, 208 (1968).

they had been employed by defendant. Under these circumstances, defendant's demand of a right of set-off is without merit.

ELLETT, C. J., and CROCKETT, WILKINS and HALL, JJ.