**SUGARHOUSE FINANCE COMPANY, Plaintiff and Appellant,**

v.

**Eugene L. ANDERSON and Colleen W. Anderson, Defendants and Respondents.**

**No. 16462.**

Supreme Court of Utah.

April 15, 1980.

---

Wayne G. Petty and Royal I. Hansen of Moyle & Draper, Salt Lake City, for plaintiff and appellant.

H. Ralph Klemm, Salt Lake City, for defendants and respondents.

HALL, Justice:

Plaintiff Sugarhouse Finance Company appeals the lower court's grant of a motion made by defendant Eugene L. Anderson for an order enforcing the terms of an agreement in settlement of a judgment held against him.

On July 7, 1976, plaintiff filed a complaint against defendant for nonpayment of a promissory note. Judgment thereon was rendered in favor of plaintiff on December 17, 1976, in the amount of $2,423.86, plus interest, costs, and attorneys' fees. A copy of the judgment was docketed by plaintiff in Sevier County, defendant's county of residence.

Some two years later, on January 29, 1979, plaintiff served defendant with an Order in Supplemental Proceedings, apparently due to the latter's failure during the

interim to satisfy the judgment. Two days after receiving this notice, defendant met with plaintiff's president, Mr. Neuman Petty, for the purpose of discussing an alternative to full payment of the judgment. While reports conflict as to the exact content of that conversation, it is clear the defendant informed plaintiff of the existence of numerous outstanding obligations against him, including medical expenses incurred pursuant to treatment for injuries sustained in an automobile accident in 1978. Defendant initially proposed that plaintiff accept $1,500 in full settlement of the claim, which proposal was refused. Defendant then asserted that he was contemplating bankruptcy, and that such a measure would result in plaintiff's judgment being discharged. The parties finally settled on a figure of $2,200 in full satisfaction of the claim. Defendant issued Petty a check for this amount, asking him, however, not to negotiate it immediately, there being some uncertainty as to the sufficiency of funds in the account to cover it. At no time during the conversation did defendant represent to Petty that defendant had any ownership interest in real property, nor did Petty make inquiry in that regard.

The day following these negotiations, plaintiff received a telephone call from a title company. Plaintiff learned from that call, allegedly for the first time, that defendant owned part interest in a 12-acre tract in Sevier County, Utah, four acres of which were the subject of a pending sale. The property was owned jointly with another party, and was otherwise encumbered, such that defendant hoped to receive no more than $2,000 from the transaction. The title company had telephoned to request that plaintiff file a satisfaction of judgment in order to clear title to the property in question; plaintiff refused the request.

The next day, the defendant called to inform plaintiff that there were then sufficient funds in the account to cover the previously issued check. Plaintiff responded by indicating that it did not intend on going through with the settlement based on what it had learned from the title company. The check was subsequently returned to defendant.

Defendant thereafter filed a motion in the original action, asking that the court order plaintiff to comply with the terms of the agreement of settlement. Hearing on the motion was convened on March 13, 1979, at the conclusion of which the motion was granted and the plaintiff was ordered upon receipt of the $2,200 payment, to file a satisfaction of judgment with the court. It is from this order that plaintiff appeals.

Plaintiff first challenges the procedural propriety of defendant's petition for judicial redress by means of a motion in the initial action. Under plaintiff's view, defendant should be constrained to raise the alleged accord and satisfaction only as an affirmative defense to further attempts by the plaintiff to enforce the terms of the original promissory note. This contention is in error.

It is true that an assertion of accord and satisfaction is generally raised by way of affirmative defense to an action on the original agreement.[1] When so raised, it must be properly pleaded.[2] This is not to say, however, that a party to an accord and satisfaction may seek judicial benefit thereof only by means of affirmative defense. The Utah Rules of Civil Procedure[3] provide that:

> On motion and upon such terms as are just, the court may in the furtherance of justice relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . . (6) the judgment has been satisfied, released, or discharged . . . or it is no longer equitable that the judgment should have prospective application; . . .. The procedure for obtaining any relief from a judgment shall be by

---

1. *Hintze v. Seaich*, 20 Utah 2d 275, 437 P.2d 202 (1968).

2. See Rule 8(c), Utah Rules of Civil Procedure.

3. Rule 60(b), Utah Rules of Civil Procedure.

motion as prescribed in these Rules or by an independent action.

Under this rule, a party having a good faith claim of satisfaction of judgment need not wait until the opposing party, at leisure, seeks to enforce the judgment, but may seize the initiative, and seek direct judicial sanction of the satisfaction. Defendant's assertions were, therefore, properly brought before, and dealt with by, the trial court.

Plaintiff next challenges the validity of the accord allegedly reached between the parties on the basis of adequacy of consideration. Plaintiff points out that, as defendant sought a substitute settlement of an undisputed and liquidated claim, separate and additional consideration was required to support the accord. It is plaintiff's position that no such consideration existed in the present case.

Accord and satisfaction arises where the parties to an agreement resolve that a given performance by one party thereto, offered in substitution of the performance originally agreed upon, will discharge the obligation created under the original agreement.[4] Essential to its validity are, (1) a proper subject matter; (2) competent parties; (3) an assent or meeting of the minds of the parties; and (4) a consideration given for the accord.[5] Where the underlying claim is disputed or uncertain ("unliquidated"), the obligor's assent to the definite statement of performance in the accord amounts to sufficient consideration, as it constitutes a surrender of the right to dispute the initial obligation.[6]

Where, however, the underlying claim is liquidated and certain as to amount, separate consideration must be found to support the accord; otherwise, the obligor binds himself to do nothing he was not already obligated to do, and the obligee's promise to accept a substitute performance is unenforceable.[7] The original obligation in the present case being of a definite and undisputed amount, the question presented is whether or not separate consideration was given to support the accord reached by the parties.

No completely satisfactory and comprehensive definition of "consideration" has ever been devised.[8] It is generally agreed, however, that where a promise is supported by the incurrence, on the part of the promisee, of a legal detriment in order to confer a benefit on the promisor, such is sufficient to serve as consideration,[9] thereby rendering the promise legally enforceable.[10] This is particularly so when an accord and satisfaction is involved, the modern trend among the courts being to uphold such agreements wherever possible.[11] In such cases, consideration is often found in the obligor's agreement to alter the means or method of payment of the obligation initially owed,[12] or to surrender the assertion of a legally enforceable right.[13]

It is to be noted that, in the present case, plaintiff held a judgment which had been outstanding for more than two years. Pursuant to the parties' conversation of January 31, 1979, defendant agreed that,

4. *Cannon v. Stevens School of Business, Inc.,* Utah, 560 P.2d 1383 (1977).

5. *Ralph A. Badger and Co. v. Fidelity Building and Loan Ass'n,* 94 Utah 97, 75 P.2d 669 (1938).

6. *Bennett v. Robinson's Medical Mart, Inc.,* 18 Utah 2d 186, 417 P.2d 761 (1966); *Tates, Inc. v. Little America Refining Co.,* Utah, 535 P.2d 1228 (1975).

7. *Tates, Inc. v. Little America Refining Co.,* supra footnote 6; *F.M.A. Financial Corp. v. Build, Inc.,* 17 Utah 2d 80, 404 P.2d 670 (1965).

8. 1 Corbin on Contracts § 109, p. 487.

9. As to whether there need be a benefit as well as a detriment to constitute consideration see

*Petroleum Refractionating Corp. v. Kendrick Oil Co.,* 65 F.2d 997 (10th Cir. 1933); Restatement 1, Contracts, § 81; 1 Corbin on Contracts §§ 121, 122.

10. *Manwill v. Oyler,* 11 Utah 2d 433, 361 P.2d 177 (1961).

11. *F.M.A. Financial Corp. v. Build, Inc.,* supra footnote 7.

12. *Tates, Inc. v. Little America Refining Co.,* supra footnote 6.

13. *Petroleum Refractionating Corp. v. Kendrick Oil Co.,* supra footnote 9.

for a release of the judgment upon payment of a lesser agreed amount, he would negotiate a loan with a third party to enable him to pay off the substitute obligation immediately. A check was given for the agreed amount at the conclusion of that conversation, and authorization to cash it followed two days later. In effect, defendant had agreed to transfer the debt represented by plaintiff's judgment to a third party, thereby immediately satisfying the obligation owed to plaintiff. This was something defendant had no legal obligation to do; by law, plaintiff could only move by levy of execution against property already owned by the defendant—plaintiff could not legally require defendant to incur additional obligations to satisfy the judgment.[14] By so doing, defendant deliberately incurred the detriment of surrendering his right to limit plaintiff's ability to obtain satisfaction of the underlying judgment, and bestowed upon plaintiff the benefit of immediate payment by means of the incurrence of additional indebtedness. We hold such action to constitute sufficient consideration to support the accord negotiated by the parties.

■ We note, in addition, that this jurisdiction recognizes the doctrine of promissory estoppel, whereby an individual who has made a promise which the individual should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is estoppel to deny or repudiate the promise should the promisee or some third party suffer detriment thereby.[15] We note that, in the present case, defendant agreed to incur additional indebtedness pursuant to the terms of the accord, in reliance on plaintiff's promise to accept immediate payment of a lesser amount in full satisfaction of the underlying obligation. As such, plaintiff should now be estopped to deny or reject the promise made.

■ Plaintiff next asserts that, even if adequate consideration exists to support the accord entered into by the parties, that agreement is rendered voidable by reason of fraudulent inducement. It is plaintiff's assertion that, by failing to inform him of the anticipated sale of the property located in Sevier County, defendant induced plaintiff to enter into the accord. We do not concur.

■ Where a party enters into an agreement in reasonable reliance upon a material and fraudulent misrepresentation, the agreement thereby created is voidable.[16] A finding of fraud requires a showing of a false representation of an existing material fact, made knowingly or recklessly for the purpose of inducing reliance thereon upon which plaintiff reasonably relies to his detriment.[17] Misrepresentation may be made either by affirmative statement or by material omission, where there exists a duty to speak.[18] Such a duty will not be found where the parties deal at arm's length, and where the underlying facts are reasonably within the knowledge of both parties.[19] Under such circumstances, the plaintiff is obliged to take reasonable steps to inform himself, and to protect his own interests.[20]

In the present case, plaintiff alleges fraud both in defendant's failure to state that he owned the property in question,[21]

14. See generally Rules 64A–F, 69, Utah Rules of Civil Procedure.

15. Restatement 1, Contracts, § 90; *Baggs v. Anderson*, Utah, 528 P.2d 141 (1974).

16. See generally 12 Williston on Contracts § 1486 et seq.

17. *Schwartz v. Tanner*, Utah, 576 P.2d 873 (1978); *Oberg v. Sanders*, 111 Utah 507, 184 P.2d 229 (1947).

18. *Elder v. Clawson*, 14 Utah 2d 379, 384 P.2d 802 (1963).

19. See 37 C.J.S. Fraud § 16b.

20. *Jardine v. Brunswick Corp.*, 18 Utah 2d 378, 423 P.2d 659 (1967).

21. The parties dispute whether or not an affirmative representation that defendant had no "assets" was made. This Court, reviewing the facts in the light most favorable to the prevailing party below, will assume that no such representation was made. See *Bush v. Coult*, Utah, 594 P.2d 865 (1979); *Rodgers v. Hansen*, Utah, 580 P.2d 233 (1978).

and in his failure to disclose the proposed sale thereof.

 Plaintiff's assumption that defendant owned no assets, based simply on defendant's failure to inform him to the contrary, does not constitute reasonable reliance, in light of the fact that defendant's interest in the property in question was a matter of public record. Plaintiff is a professional financing institution; it had had sufficient foresight to protect its interests by docketing the judgment in Sevier County. If indeed it failed to investigate the record at that time, in order to ascertain those holdings of defendant which might be available to satisfy the judgment, and if it further failed to make inquiry as to defendant's holdings at the time the accord was negotiated, it may not now lay its failure to protect its own interests at defendant's feet in the form of an allegation of fraud.

It is similarly clear that plaintiff did not rely to its detriment on defendant's failure to disclose that a sale of property was contemplated. The docketing of the judgment in Sevier County constituted a valid lien on all property situated in that county.[22] Hence, the transfer of any property situate within the county would be subject to the lien thereby created. Consequently, the conveyance of the property in question could work no injury to plaintiff's interests.

The trial court's decision is hereby affirmed. Costs to defendant.

CROCKETT, C. J., and MAUGHAN, WILKINS and STEWART, JJ., concur.