UNITED AMERICAN LIFE INSUR-
ANCE COMPANY, a corporation,
Plaintiff and Appellant,

v.

ZIONS FIRST NATIONAL BANK, a na-
tional association, Defendant, Third-
Party Plaintiff and Respondent,

v.

Franklin D. JOHNSON and Kathleen
Johnson, his wife; Glendon E. Johnson
and Bobette Johnson, his wife; Clifton
I. Johnson; Johnson Lank Company, a
partnership; and Bar 70 Ranches, Inc., a
Nevada corporation, Third-Party and
Additional Party Defendants and Re-
spondents.

No. 17187.

Supreme Court of Utah.

Feb. 4, 1982.

Edward M. Garrett of Garrett & Sturdy, Salt Lake City, for plaintiff and appellant.

Richard H. Nebeker, Salt Lake City, for defendant, third-party plaintiff and respondent.

HALL, Chief Justice:

Plaintiff brought this action to compel defendant Zions First National Bank to reconvey a trust deed on unimproved land and permanently to enjoin the bank from proceeding with a trustee's sale. The trial court found in favor of the bank and plaintiff appeals.

The record supports the following facts. In November, 1968, the bank loaned $150,-

000 to Johnson Land Company (a partnership composed of Clifton Johnson, Glendon Johnson, Franklin Johnson and Bar 70 Ranches) and to Clifton Johnson, Franklin Johnson and Glendon Johnson, individually. A trust deed note was executed for $150,000 with interest at ten percent (10%) per annum. The note was secured by approximately 1,100 acres of unimproved land (known as Bar 70 Ranches) near Green River, Utah.

By 1973, no payments had been made on the principal. Interest payments had been made but not on a timely basis. Negotiations ultimately resulted in extension and modification agreements which changed the interest rate and extended the time to July 1, 1978, when the entire balance was to become due and payable.

From August 6, 1973, through December 10, 1973, Franklin Johnson and Wayne Hintze, the bank's Senior Vice President, exchanged correspondence regarding payment of $75,000 on the loan and amortization of the balance of $75,000 over a five-year period. On December 10, 1973, Johnson visited Hintze at the bank. Although disputed by Johnson,[1] the trial court found that the discussion was as recorded in a memorandum prepared by Hintze:

TO: FILE
FROM: Wayne S. Hintze, Vice President
SUBJECT: Bar 70 Ranches
Today Mr. Franklin Johnson indicated that he would be able to pay $75,000 on the principle [sic] of the subject loan reducing it to $75,000, that then he would ask that the balance of the $75,000 be taken over by our Commercial Loan Department with the understanding that they would pay $25,000 within 30 days and the balance of $50,000 within a 90 day period on a personal loan to he [sic] and Glendon Johnson.

The court also found that Hintze agreed that the bank would release its trust deed

lien on Bar 70 Ranches when and if the bank received full payment.

Also in December, 1973, Franklin Johnson and United American Life (plaintiff) agreed to a refinancing package wherein plaintiff agreed to advance Johnson $185,-000 in addition to a prior loan outstanding on property located in Weber County, Utah; provided it be given additional collateral, including a first lien on the Bar 70 Ranches.

In January, 1974, plaintiff mailed a check in the amount of $152,816.98 to Title Insurance Agency of Salt Lake City, Utah, with instructions to pay the bank $50,000.[2] On January 23, 1974, plaintiff was given a trust deed on the Bar 70 Ranches by Glendon Johnson, Franklin Johnson and their wives. Title Insurance Agency wrote a title policy insuring that, effective January 23, 1974, plaintiff's trust deed was the priority lien on the property.

On January 23, 1974, Title Insurance Agency drew a check in the sum of $50,000 payable to the bank. On the voucher portion of the check were printed the following words:

Attached check is in settlement of accounts listed hereon. Before depositing, detach this duplicate of voucher and retain for your record. If not correct, return.

Thereunder, the following language had been typewritten:

Payment in full of Trust Deed dated November 19, 1968, executed by Bar 70 Ranches, Inc. recorded November 20, 1968, as Entry No. ——, in Book 170, pages 198–200.

Sometime subsequent to January 25, 1974, one George Robinson of Title Insurance Agency went to the bank and delivered the $50,000 check to either Hintze or Hintze's secretary. Hintze saw the check but neglected to note the language con-

---

1. Johnson testified that Hintze agreed to release the trust deed upon payment of $75,000, with the balance to be carried as a personal unsecured loan.

2. By letter dated January 2, 1974, plaintiff advised Title Insurance Agency that "... there is a lien due to Zions First National Bank in the amount of $150,000. It is understood that this lien may be released upon payment of $50,000 to the Zions First National Bank."

tained on the voucher. He was surprised at the amount ($50,000) and instructed that the check be held until Johnson furnished additional funds.[3] Ultimately, on March 1, 1974, the check was inadvertently deposited with a stamped endorsement, by some person other than Hintze.

On December 21, 1976, Johnson Land Company (by Franklin Johnson) conveyed Bar 70 Ranches property to plaintiff. On or about January 4, 1977, Title Insurance Agency wrote for plaintiff an owner's policy of title insurance. No reference was made therein as to the bank's trust deed lien although it was still of record.

When Johnson's loan became delinquent, on March 31, 1978, the bank recorded a notice of default. Plaintiff secured a temporary restraining order, which halted foreclosure pending this action. After hearing the evidence, the trial court found in favor of the bank. The court concluded that the bank was entitled to proceed with the foreclosure action and that in the event plaintiff pays the bank the total amount of the indebtedness[4] or upon redemption, plaintiff is entitled to judgment against Johnson, et al., for breach of the covenants of the warranty deed of December 21, 1976.

On appeal, plaintiff claims that the trial court erred in failing to find "accord and satisfaction" and "equitable estoppel."

▇▇ Plaintiff contends that endorsement of the check for $50,000 constituted an accord and satisfaction of the bank's lien. An accord and satisfaction is a method of discharging a contract, or settling a claim arising from a contract, by substituting for such contract or claim an agreement for the satisfaction thereof, and the execution of the substituted agreement.[5] Foundational principles of accord and satisfaction in the negotiation of a check are as stated in *Tates, Inc. v. Little America Refining*:[6]

> Ordinarily, the payment of part of a debt does not discharge it; and this is true even though the paying debtor exacts a promise that it will do so. The reason for this is that in making the part payment, the debtor is doing nothing more than he is legally obligated to do, and therefore he gives the creditor no consideration for the promise that the part payment will be accepted to discharge the entire debt.

▇▇ The party alleging accord and satisfaction has the burden of proving[7] that there has been a definite meeting of the minds on a new and substitute contract.[8] In the instant case, the trial court expressly found that "Hintze at all times was only willing to reconvey the Trust Deed lien with the understanding that the real estate loan of $150,000 would be paid in full." Although disputed, there was substantial evidence adduced at trial which would support such finding.[9] The Hintze memorandum specifically stated that Johnson would pay $75,000 on the principal and then he would finance the balance of $75,000 through the Commercial Loan Department. The trial court concluded that "[t]here was no accord and satisfaction reached between Franklin D. Johnson or the agents of Title Insurance Agency with Wayne S. Hintze of Zions First National Bank . . .," and that

3. On June 12, 1974, Franklin Johnson paid an additional $25,000, which was applied on the loan.

4. "The balance of $83,906.23 with accrued interest of $31,850.00 and late charges of $12,-515.63 to the date of trial and attorney's fees [to the date of the judgment] in the sum of $8,200.00 . . . ."

5. *Cannon v. Stevens School of Business, Inc.*, Utah, 560 P.2d 1383 (1977). See also, 1 Am. Jur.2d, Accord and Satisfaction, § 1.

6. Utah, 535 P.2d 1228 (1975).

7. *Hintze v. Seaich*, 20 Utah 2d 275, 437 P.2d 202 (1968).

8. *Tates, Inc. v. Little America Refining Co.*, *supra*, note 6.

9. This Court must assume that the trial court believed those aspects of the evidence which may be deemed to support his findings and judgment. *Tates, Inc. v. Little America Refining Co.*, *supra*, note 6, citing *Memmott v. United States Fuel Co.*, 22 Utah 2d 356, 453 P.2d 155 (1969).

"[t]here was no consideration given to the bank to impose any obligation upon it to reconvey the Trust Deed lien upon payment of $50,000 only." Given that the bank's loan was secured by 1,100 acres of land (complete with water rights), it is not surprising that the bank would not accept one-third of the amount outstanding on the loan as total payment. Plaintiff has not met its burden on appeal in challenging the sufficiency of the evidence; hence, the lower court's findings and conclusions with respect to accord and satisfaction are hereby sustained.

Plaintiff also claims that the doctrine of equitable estoppel precludes the bank from denying its duty to reconvey the trust deed.

■■ Elements of equitable estoppel are as follows: conduct by one party which leads another party, in reliance thereon, to adopt a course of action resulting in detriment or damage if the first party is permitted to repudiate his conduct.[10] It is to be remembered that Title Insurance Agency, the entity which prepared and delivered the check and voucher containing the "payment in full" language is not even a party to these proceedings. The $50,000 received by the bank belonged to neither plaintiff nor to Title Insurance Agency, but to Franklin Johnson, et al., who do not claim estoppel. Furthermore, the title policy written by Title Insurance Agency was issued before the check was even delivered, much less negotiated. Plaintiff may have represented to Title Insurance Agency that the bank would settle for less than the full $150,000 outstanding, but there is no credible evidence as to any representation the bank may have made to either Title Insurance Agency or plaintiff. The only evidence that the bank ever made such representations came from two sources: (1) Franklin

Johnson's testimony as to his December, 1973, meeting with Hintze, which was disbelieved by the trial court in favor of the memorandum prepared by Hintze at the time; and (2) the conditions allegedly imposed upon the check voucher, which the trial court expressly found to have been "deposited by mistake."[11]

Just as was the case for the accord and satisfaction issue discussed *supra*, the issue of equitable estoppel also turns on the facts. There being substantial evidence in the record to support the trial judge's findings, we do not substitute our judgment for his.[12]

Affirmed. Costs to the bank.

KENNETH RIGTRUP, District Judge, and J. ALLAN CROCKETT, Retired Justice, concur.

HOWE, Justice (concurring):

I concur in affirming the lower court's findings and conclusions that there was not an accord and satisfaction here. I also agree that there should be no estoppel invoked because the plaintiff made its loan to Johnson and took back and recorded its trust deed before the $50,000 check was delivered to the Bank. Also, the Title Insurance Agency wrote and issued its policy insuring the plaintiff's trust deed as a first lien before the $50,000 check was delivered to the Bank. In view of those facts, neither the plaintiff nor the Title Insurance Agency could have relied on the conduct of the Bank in accepting and cashing the check. However, I do not think it is fatal to the defense of estoppel that Title Insurance Agency is not a party to this action and that the Bank did not make any representation to either Title Insurance Agency or plaintiff. Further, I believe it makes no difference that the $50,000 received by the

10. *Carnesecca v. Carnesecca*, Utah, 572 P.2d 708 (1977), citing *Koch, Inc. v. J.C. Penney Co.*, Utah, 543 P.2d 903 (1975). See also, *Celebrity Club, Inc. v. Utah Liquor Control*, Utah, 602 P.2d 689 (1979).

11. See also, discussion *supra* with respect to the required consideration for an accord and satisfaction.

12. *Utah County v. Baxter*, Utah, 635 P.2d 61 (1981).

Bank belonged to the Johnsons and not to either the plaintiff or Title Insurance Agency.

Had the plaintiff or Title Insurance Agency relied upon the acceptance of the check by the Bank in the making of the loan or in the writing of the title policy, the existence of these other facts which the majority opinion mentions and apparently relies upon, should not prevent an estoppel from being imposed on the Bank.

STEWART and OAKS, JJ., do not participate herein; RIGTRUP, District Judge, and CROCKETT, Retired Justice, sat.

MAUGHAN, J., heard the arguments, but died before the opinion was filed.