466 P.2d 368

**RELIABLE FURNITURE COMPANY, a corporation, Plaintiff and Appellant,**

v.

**AMERICAN HOME ASSURANCE CO., a corporation, Western General Agency, a corporation, and General Adjustment Bureau, a corporation, Defendants and Respondents.**

No. 11656.

Supreme Court of Utah.

March 10, 1970.

Richard W. Campbell, Pete N. Vlahos, Ogden, for appellant.

Rex J. Hanson, Marlin R. Lybbert, Salt Lake City, Paul A. Renne, San Francisco, Cal., for respondents.

CROCKETT, Chief Justice.

Plaintiff, Reliable Furniture Company, sued the defendant insurance companies seeking to avoid a settlement on a business interruption loss covered by a policy with the defendant American Home Assurance Company, which settlement plaintiff alleges it was induced to enter into by fraud and duress; and also to recover for damage to its business resulting from the defendant's actions in that regard. This case has been here before on appeal challenging a summary judgment granted at the pretrial conference.[1] It was re- manded for further proceedings. After the plaintiff's evidence was presented, the defendants made a motion to dismiss (in effect a nonsuit) in accordance with Rule 41(b), U.R.C.P., which the trial court granted. Plaintiff appeals challenging that ruling and urging that the issues should have been submitted to the jury.

The preliminary facts are set forth in the prior opinion, and are supplemented here as shown by the plaintiff's evidence. The Reliable Furniture Store had operated for some years near 23rd Street on Washington Avenue in Ogden. It was insured under two fire insurance policies: one issued by Fidelity and Guaranty Insurance Underwriters, Inc., which covered fire loss on inventory; the other issued by defendant American Home Assurance Company, which covered loss because of business interruption resulting from fire.

On March 30, 1961, a fire in plaintiff's store caused extensive damages and agents for both insurance companies proceeded to investigate and negotiate concerning the loss. Six weeks later, on June 16, 1961, Mr. Jack Day, representing Fidelity and Guaranty on the inventory loss, had received authorization to pay $84,923.39 to settle that claim. On June 19, 1961, a meeting was arranged at Reliable Furniture to discuss the claims. It was attended by Mr. Sam Herscovitz (Reliable's presi-

1. Reliable Furniture Co. v. Fidelity and Guaranty Ins. Underwriters, 16 Utah 2d 211, 398 P.2d 685.

dent, herein referred to as plaintiff), Mr. Wayne Dykstra (Reliable's bookkeeper), Mr. Jack Day for Fidelity and Guaranty, and Mr. William Ball for defendant American Home Assurance. What was done and said at that meeting is the core of the controversy here.

Plaintiff's claim of fraud and duress is that the insurance men made false and deceiving statements and imposed unwarranted conditions of coercion upon the plaintiff based on these facts: that inasmuch as the parties had previously agreed that $84,923.39 was the correct amount of the inventory loss, the plaintiff was then entitled unconditionally to the payment of that sum, but that the insurance men, in collusion with each other, improperly imposed the condition that it would not be paid unless the plaintiff would accept what he regarded as a grossly inadequate settlement of $12,609.39 for the business interruption loss covered by the other policy (defendant American Home Assurance); and they insisted that if plaintiff did not accept the latter settlement there would have to be arbitration or a lawsuit on both claims.

Plaintiff avers that he was so badly in need of money to get his business back into operation that he was thus forced against his will to sign the proofs of loss and accept both settlements. The further facts are that the following day, June 20th, the $84,923.39 check was deposited in Reliable's account, and the $12,609.39 was held until the larger check had been cleared and credited. After ascertaining that this had been accomplished, nine days later, the plaintiff endorsed the $12,609.39 check and deposited it for collection; and after the latter check was cleared and credited to Reliable's account, this suit was filed.

▉ Inasmuch as the trial court granted the defendant's motion to dismiss on the ground that the plaintiff's evidence was insufficient to go to the jury (in effect a nonsuit), we review the facts in the light most favorable to the plaintiff's contentions.[2] In applying that rule here, there is another proposition of law to be considered in connection therewith which has special application in this case. Where a person (the plaintiff) has in writing accepted a settlement of a disputed claim the effect is an accord and satisfaction,[3] the avoidance of which requires clear and convincing evidence.[4] Therefore the question to be addressed here is whether the trial court was justified in his view that there was no reason-

2. See Raymond v. Union Pac. R. Co., 113 Utah 26, 191 P.2d 137; Wells v. Denver and Rio Grande Western Railroad Co., 19 Utah 2d 89, 426 P.2d 229.

3. Bennett v. Robinson's Medical Mart, Inc., 18 Utah 2d 186, 417 P.2d 761.
4. Jimenez v. O'Brien, 117 Utah 82, 213 P.2d 337; Ulibarri v. Christenson, 2 Utah 2d 367, 275 P.2d 170.

able basis in the evidence proffered by the plaintiff which jurors acting fairly and reasonably could regard as clear and convincing that the plaintiff was induced by fraud or duress to enter into the settlement in question.

■ As to the charge of fraud: the plaintiff's evidence so clearly falls short of making out the essential elements of fraud by showing that he was deceived by false representations of material fact, upon which he reasonably relied to his detriment, that it requires no detailed discussion here.[5] Such plausibility as there is to the plaintiff's contentions relates to the issue of coercion. On this issue it is appropriate to review certain facts which stand undisputed in opposition to the plaintiff's position and which seem to have been persuasive upon the trial court.

■ First it is to be borne in mind that this is not a situation where there was any noteworthy inequality in acumen, education or experience of the parties to the transaction so that one side might impose upon or take advantage of the other. The plaintiff was an intelligent man of many years of business experience, and a law school graduate. However, it seems not at all unlikely, and for the purpose of our analysis we assume it to be a fact, that

he was in need of money to get his business back into operation; and further, that he felt compelled to accept what he regarded as an inadequate settlement of $12,609.39 on the business operation loss in order to get the $84,923.39 on the inventory loss.[6] But beyond those facts there are insuperable obstacles for the plaintiff to overcome in attempting to sustain his claim of coercion. During the nine-day period in which he held the $12,609.39 check while waiting for the larger check to clear he had ample opportunity to consider whether he had been cheated or taken advantage of in the settlement; and he in fact consulted with his attorney about the matter. But the important and controlling fact is that after the larger check had cleared, he was entirely free to make up his mind whether to endorse and cash the $12,609.39 check or not. Thus whatever coercion may have existed to compel the acceptance of the $12,609.39 on the business interruption loss in order to get his entitlement of $84,923.39 on the inventory loss ceased to exist when he obtained the latter amount.

■ We note our accord with the cases cited and relied upon by plaintiff to the effect that the fact that there was a notation of "payment in full" on the check

5. For elements of fraud see Stuck v. Delta Land & Water Co., 63 Utah 495, 227 P. 791; Pace v. Parrish, 122 Utah 141, 247 P.2d 273.

6. As to coercion and duress, see Fox v. Piercey, 119 Utah 367, 227 P.2d 763 (1951); Ellison v. Pingree, 64 Utah 468, 231 P. 827 (1924).

does not necessarily settle the obligations between the parties. This is true in circumstances where that does not appear to be the fact.[7] However, it is one of the factors to be considered in the total picture. In so reviewing this case, as shown by the plaintiff's own evidence: there was a disputed claim, which the parties, in full awareness of the facts, had discussed in depth, had arrived at figures of settlement which were set forth in writing in the proofs of loss, signed by the plaintiff, and for which checks were given and accepted; and the claimed grounds for avoidance of the settlement had ceased to exist when the plaintiff voluntarily chose to endorse the check and take the proceeds thereof.[8] We see no reason to disagree with the view adopted by the trial court that there is no basis in this evidence upon which jurors could reasonably regard it as clear and convincing that the plaintiff was induced to enter into the settlement in question as a result of fraud or duress practiced upon him by the defendants.

Judgment affirmed. Costs to defendants (respondents).

CALLISTER, TUCKETT, HENRIOD, and ELLETT, JJ., concur.

---

7. Bennett v. Robinson's Medical Mart, Inc., 18 Utah 2d 186, 417 P.2d 761; Hintze v. Seaich, 20 Utah 2d 275, 437 P. 2d 202.

8. See Prosser, Law of Torts, p. 730: That where any pressure has ceased so party can make independent decision he is precluded from claiming coercion.