**A. RAY CURTIS COMPANY, INC., a Utah Corporation, Plaintiff and Appellant,**

**v.**

**Glen BARNES, Defendant and Respondent.**

**No. 14397.**

Supreme Court of Utah.

Aug. 23, 1976.

---

4. *State v. Fertig,* 120 Utah 224, 233 P.2d 347 (1951).

Daniel W. Marcum of Kesler & Gordon, Salt Lake City, for plaintiff and appellant.

Roger F. Cutler of Cutler, Price & Goodwill, Salt Lake City, for defendant and respondent.

HENRIOD, Chief Justice:

Appeal from a summary judgment of no cause of action in a case where Barnes had assured payment for obligations of a corporation.

Trouble came financially to the corporation accompanied with a headache to the obligee, and dyspepsia to the defendant surety, who, to relieve his ailment, wrote and executed and delivered to the plaintiff after negotiations, a check that was accepted and run through the bank,—upon which was written specifically, unequivocally and without reservation: "Endorsement of this check constitutes payment in full."

At that point the suretyship expired and should be interred.

The appellant now says the check it received, endorsed and cashed and used, and upon which presumably it is now drawing interest,—was nadum pactum, and that the maker somehow is still the payor for any balance the appellant might urge would be due,—but for the fortuitous part payment.

This was not an accord and satisfaction situation, involving a disputed amount, but one where the plaintiff pressured defendant; agreed to settle for a lesser amount; received a check from defendant, read the endorsement, but did not notify defendant of any unacceptability, and cashed it.

Justice would seem meaningless to arrive at a ridiculous conclusion other than to affirm the trial court,—which we do.

ELLETT and TUCKETT and MAUGHAN, JJ., concur.

CROCKETT, Justice (concurring in result):

I concur with the affirmance of the judgment of the trial court, but desire to set forth my own bases for doing so.

Disregarding niceties of nomenclature, this case was submitted to the trial court for determination upon full disclosure of the evidence and the contentions of the parties. It is true that in addressing their respective motions to the court the parties referred to them as motions for summary judgment. But, the terminology used is not controlling, the court should look at the essence of what was done. On the pleadings, answers to interrogatories, and the depositions of A. Ray Curtis, president of the plaintiff, and of Hugh Barnes, president of the principal debtor, Barnes Heating & Electric Co., all material facts were disclosed. This is affirmed because both parties so treated it and so submitted the matter to the court on their respective motions; and is further confirmed by the fact that in this court the plaintiff has not asked for a trial, nor for the opportunity to present other evidence, but asks that the ruling be reversed and that on the basis of the facts shown, judgment be entered in its favor.

In view of this situation, we should review the facts as recited with completeness and clarity by Judge Croft in his "Statement of Uncontested Facts."

In the interest of brevity, I have omitted some portions, and recite here certain essentials from that statement:

The Barnes Heating and Electric Corporation fell on hard financial times and was unable to pay its financial obligations to the plaintiff. The plaintiff made sundry vigorous attempts at collection. The plaintiff acknowledged that the company [Barnes] was in trouble financially and that it was not possible for the company to make payment in full all at once. In recognition of the financial problems, part of the indebtedness was worked out by the labor of Hugh Barnes

between March 31, 1973 and June 20, 1973.

Explanatory of the court's further "Statement of Uncontested Facts" I interpolate here reference to crucial material from the depositions of the principal characters in this drama, Hugh Barnes, for defendant, and A. Ray Curtis, for plaintiff. It should be kept in mind that these men appear to have been friends who had done business together for some years; and that it cannot be questioned that the only debt or obligation under discussion was that of Barnes Heating & Electric Co. to plaintiff Curtis Company.

In Hugh Barnes' deposition he states:

I called Ray up and told him I was sick and tired of his [name omitted] calling the wife and him telling her was going to do this and do that to me. I made an appointment . . .. I says to Ray, "How much will you settle the Barnes Heating and Electric account for, if I can dig up some money, cash?"

"How much will you give me?"

I says, "Ray, maybe I can dig up $3,000.00; maybe a little more. I don't know. Between six weeks or two months I can dig up that much money."

The plaintiff's version of this conversation, through the deposition of its president, A. Ray Curtis, is not materially different, except that he says they were talking about releasing "you," meaning Hugh Barnes personally. Mr. Curtis does not even contend that he said anything more specific about releasing *only* Hugh Barnes personally, nor about reserving his right to collect from the Barnes Heating & Electric Co., or from the son, defendant Glen Barnes.

The "Statement of Uncontested Facts" of the trial court continues:

\*   \*   \*   \*   \*   \*

Pursuant to an agreement between the parties, Hugh Barnes tendered his personal check for the sum of $3,000.00 as full payment. This check was issued March 27, 1974 and contained a restrictive endorsement which stated:

"Endorsement of this check constitutes payment in full of interest and principal to A. Ray Curtis from Barnes Heating and Electric Company."

The plaintiff [Curtis] had prior experience in regard to settlement of accounts and knowingly endorsed and received the funds from that check. There has been no attempt to void that transaction and it was considered by all parties as at least a full accord and satisfaction with respect to Hugh Barnes, Hugh Barnes and Glen Barnes were guarantors of the debt owed by the Barnes Heating and Electric Company.

There was no reservation of any rights against any of the guarantors of principal creditor.

Based on the foregoing undisputed facts, the Court finds as a matter of law that:

\*   \*   \*   \*   \*   \*

There was a valid accord and satisfaction agreement between the plaintiff and Barnes Heating and Electric Company, whereby the parties through their respective presidents mutually agreed to satisfy a contingent debt of a creditor, which was known to be insolvent, by the payment of $3,000.00 as full and complete compromise of the entire claim.

The accord and satisfaction of the claim of the principal debtor, Barnes Heating and Electric Company removed any legal obligations for payment by the guarantors. . . .

I am in agreement with the conclusion made by the trial court as a matter of law that under the uncontested facts: That such a discussion occurred; that, pursuant to that discussion, the check was presented with the restrictive endorsement; and where the plaintiff's president acknowledged that he observed and read the restrictive endorsement and acquiesced therein by cashing the check and receiving the

proceeds, without at any time mentioning any reservation of rights against the co-surety, defendant Glen Barnes, no other conclusion could be arrived at consistent with equity and justice than that there was an accord and satisfaction of the debt of the principal,[1] Barnes Heating & Electric Co.; and that this accord and satisfaction with the principal debtor, had the effect of releasing the sureties.[2]

In addition to the accord and satisfaction proposition just discussed, there is a supplementary basis which lends support to the ruling of the trial court in favor of the defendant herein, Glen Barnes. Even if it had accepted the plaintiff's contention: that the release was intended only to apply to the father, Hugh Barnes, he was a co-surety, with his son Glen. The generally accepted and long standing rule is that where sureties are bound jointly, a release of one discharges the others.[3] This principle applies to the defendant herein, Glen Barnes, because he and his father were fully and equally bound on the obligation as co-sureties,[4] and especially so because in releasing the father there was no reservation expressed to hold anyone else.

I have set forth the foregoing because I believe that the determination made by the trial court and the judgment entered thereon serve the ends of justice. But I do not agree with any idea that the device em-ployed by Mr. Barnes, of proffering a partial payment of an undisputed debt by a check containing words to the effect that endorsement of the check constitutes payment of the account in full, actually accomplishes that purpose. I do not believe that it is consistent with any principle of law or justice to permit a debtor to merely write "in full payment," or words of similar import, on a check for a lesser amount than he honestly owes, and then claim that the cashing of the check has paid the debt in full. The leading authorities[5] and the adjudicated cases,[6] on the subject are to the contrary. The reasoning is that a debtor should not be permitted to make a unilateral determination, and arbitrarily assert that he will pay his creditor only part of a definite and acknowledged debt, and without giving the creditor any new consideration (the part payment of a debt he is already obligated to pay being none), impose upon the creditor only the "Hobson's choice" of taking part payment as full satisfaction of his claim, or get nothing, except a right to bring a lawsuit.

Such a procedure undoubtedly has its uses in appropriate circumstances, where there is some dispute about whether a debt is owing, or how much, or perhaps where there is some uncertainty about the possibility of collection at all, as there was here because of the insolvency of Barnes Heat-

---

1. See 1 Am.Jur.2d 318, and cases there cited under note 16.

2. See 38 Am.Jur.2d 1085; *Kitsap County Credit Bureau v. Richards*, 52 Wash.2d 381, 325 P.2d 292.

3. 72 C.J.S. Principal and Surety § 230, p. 689; *Overcash v. First Nat. Bk. of Atlanta*, 115 Ga.App. 499, 155 S.E.2d 32; 2 Williston on Contracts, 3d Ed. Sec. 333; 4 Corbin on Contracts, Sec. 931.

4. See 74 Am.Jur.2d 62: I say this in awareness of the so-called equitable modifications of this rule, which are not applicable here, where the creditor knew the sureties were fully and equally bound; see our statutes Sections 15-4-4 and 5, U.C.A.1953.

5. That there must be a valid dispute or uncertainty before the acceptance of a check purporting to be in full payment will operate as an accord and satisfaction, see Corbin, Contracts, Sec. 1277 (1962); 1 C.J.S. Accord & Satisfaction § 29; 1 Am.Jur.2d Accord & Satisfaction, Sec. 18 Annot., 34 A.L.R. 1035; *St. Louis, F. Scott & Wichita Ry. Co. v. Davis*, 35 Kan. 464, 11 P. 421 (1886).

6. See cases cited in those texts and *Smoot v. Checketts, et al.*, 41 Utah 211, 125 P. 412; *Bennett v. Robinson's Medical Mart Inc.*, 18 Utah 2d 186, 417 P.2d 761; *Hintze v. Seaich*, 20 Utah 2d 275, 437 P.2d 202; *Reliable Furniture Co. v. American Home Assur. Co.*, 24 Utah 2d 93, 466 P.2d 368; *Phillips Petroleum Co. v. Hart*, 25 Utah 2d 244, 480 P.2d 131.

ing & Electric Company.[7] But it is fundamental that a debt for a definite amount (as this note) can be discharged for a lesser amount only if there is in fact an accord and satisfaction, that is, a new contract, which requires both consideration and a meeting of the minds, the same as any other contract.

On the basis of the discussion herein I concur with the affirmance of the judgment.

7. See 1 Am.Jur.2d 335, 1 C.J.S. Accord and Satisfaction § 30a, p. 508, which states the rule that a debt for an undisputed amount is not discharged by the payment of a lesser sum but points out that there is an exception if the debtor is in financial difficulty so that there is uncertainty about the possibility of a collection, and the creditor, in consideration of such fact, agrees to accept payment of a lesser sum in full satisfaction; and see cases therein cited.