68 P.3d 1021 (2003)
2003 UT App 99
In the Matter of the ADOPTION OF B.T.D., C.A.D., and D.A.D, minors.
Ann Marie Gunderman, Petitioner and Appellee,
v.
Larry Helms and Wendy Helms, Respondents and Appellants.
No. 20020083-CA.
Court of Appeals of Utah.
April 3, 2003.
*1022 Donald E. McCandless and Lorie D. Fowlke, Scribner Stirland & McCandless PC, Provo, for Appellants.
Gary H. Weight, Aldrich Nelson Weight & Esplin, Provo, for Appellee.
Before Judges JACKSON, GREENWOOD, and THORNE.

OPINION
JACKSON, Presiding Judge:
¶ 1 Appellants Larry and Wendy Helms appeal the trial court's denial of their motion to dismiss Ann Gunderman's Complaint in Intervention in an adoption proceeding, and the trial court's award of child custody to Gunderman.

BACKGROUND

I. Procedural Background
¶ 2 On February 26, 2001, the Helmses filed a Petition for Adoption and Temporary Custody of three minor children in the Fourth District Court in Utah County, pursuant to Utah Code Ann. §§ 78-30-1 to -19 (2001) (the Adoption Statute). On March 22, 2001, both natural parents, Vern Dillon and Ann Gunderman, signed documents entitled Consent to Adoption and Relinquishment of Parental Rights. On May 9, 2001, Gunderman filed a Complaint in Intervention, claiming that her consent had been procured through duress. On October 18 and 19, 2001, the trial court held an evidentiary hearing to determine whether Gunderman's consent was procured through duress, and expressly limited the evidence to that issue.
¶ 3 On December 13, 2001, the trial court issued a memorandum decision concluding that Gunderman's consent was given under duress. Without analysis, the memorandum decision also set aside the temporary custody order, dismissed the Helmses' adoption petition, and awarded Gunderman custody of the children. The trial court simply stated that it had "considered the interests and welfare of the children" in reaching this result.
*1023 ¶ 4 On December 19, 2001, the trial court sua sponte issued an amended memorandum decision affirming the December 13 decision on a new basis. Specifically, the trial court concluded that Dillon and the Helmses had violated the notice requirements of Utah Code Ann. § 78-45c-205 (2001) (Utah Uniform Child Custody Jurisdiction and Enforcement Act, hereinafter the Jurisdiction Act), and that the adoption thus could not proceed.
¶ 5 The amended memorandum decision also addressed the Helmses' earlier legal argument that the court must nevertheless hold a hearing to determine child custody based on the best interests of the children, pursuant to the Adoption Statute. See Utah Code Ann. § 78-30-4.16(2). The trial court concluded that section 78-30-4.16(2) did not apply to this case because "the statute did not contemplate parents being placed on equal footing with strangers in a custody determination where that parent's rights to her children have not been adjudicated and where the children were stolen from the mother and placed for adoption." Further, the trial court ruled that the statutory best interests of the children hearing was unnecessary. Finally, the trial court stated "a full blown best interest analysis was not undertaken as normally seen in a child custody case." Nevertheless, it determined that it had received enough evidence during the duress hearing to make findings and conclusions with respect to the children's best interests and custody.
¶ 6 Three separate opinions have been filed in this case. Judge Greenwood concurs with Judge Jackson's main opinion, which requires reversal and remand for a new duress hearing regarding Gunderman's consent to adoption of her three minor children. Judge Thorne filed a separate opinion, concluding that the statutory requirements for the children's best interest hearing were fully satisfied during the original duress hearing. Judge Greenwood concurs with Judge Thorne on that issue. Thus, a remand for a best interests of the children hearing is not required.

II. Factual Background
¶ 7 During the course of Nevada divorce proceedings, Appellee Gunderman and Dillon filed a stipulated parenting plan. They agreed to share jointly legal custody of their three minor children. Gunderman stipulated that Dillon would have sole physical custody of their children. In November 2000, two months before the divorce decree issued, Dillon removed the children from Nevada to live with his sister in Bountiful, Utah, without Gunderman's knowledge. Dillon and Dillon's family refused to tell Gunderman the children were in Utah because they believed Gunderman to be a drug addict and neglectful mother. Later, in January 2001, the Nevada court entered the divorce decree. The decree contained the custody provisions outlined in their stipulated parenting plan, including a procedure regarding change of residence to another state and removal of the children from Nevada.[1]
¶ 8 In February 2001, Dillon privately placed the children for adoption with the Helmses, who are Utah residents, without advising Gunderman. On February 26, 2001, the Helmses filed a Petition for Adoption and Temporary Custody pursuant to the Adoption Statute. The trial court awarded temporary custody to the Helmses pending final disposition of the adoption petition.
¶ 9 Pursuant to the Adoption Statute, the trial court appointed a Nevada attorney as a commissioner to advise Gunderman and take her consent to the adoption. At that time Dillon revealed to Gunderman the children's location in Utah and his plans to have the *1024 children adopted. Gunderman initially refused to give her consent to the adoption, but ultimately signed the consent before the court-appointed commissioner. However, on May 3, 2001, Gunderman filed a document in the adoption proceeding entitled "Revocation of Consent to Adoption and Relinquishment of Parental Rights by Natural Mother." A week later, her newly-retained counsel filed a Verified Complaint in Intervention, alleging that her consent had been obtained by duress. The Helmses filed a motion to dismiss the complaint arguing, inter alia, that Gunderman had no standing to intervene because she consented to the adoption.
¶ 10 The trial court held an evidentiary hearing limited to evidence of whether Gunderman consented under duress. The court ultimately decided duress existed, denied the Helmses' motion to dismiss the complaint in intervention, dismissed the Helmses' Petition for Adoption, automatically awarded custody of the children to Gunderman, and issued a pick-up order. The court based its ruling of duress on several factors, including: the Helmses' alleged failure to comply with notice requirements; the placement of the children without Gunderman's knowledge; Dillon and Dillon's family's hostility toward Gunderman; Dillon, Dillon's family, and the Helmses' attempts at moral persuasion toward Gunderman; Gunderman's emotional vulnerability to Dillon's control; Gunderman's status as a divorced woman with limited financial resources and lack of access to independent counsel; Gunderman's fear that if she did not consent the state would take custody of the children; Gunderman's alleged belief that the consent was not final since it was not notarized and that all consents are revocable for six months; and Gunderman's initial unwillingness to sign the consent. The Helmses appeal the trial court's denial of their motion to dismiss Gunderman's complaint due to its duress ruling, and its refusal to hold the statutory best interests of the children hearing after dismissing the petition for adoption.

ISSUES AND STANDARDS OF REVIEW

I. The Helmses' Motion to Dismiss Gunderman's Complaint
¶ 11 The Helmses appeal the trial court's denial of their motion to dismiss Gunderman's complaint in intervention. "`We review the ... denial of [the Helmses'] motion to dismiss for correctness, granting no deference to the district court's ruling.'" First Equity Fed., Inc. v. Phillips Dev., 2002 UT 56, ¶ 11, 52 P.3d 1137 (quoting Pendleton v. Utah State Bar, 2000 UT 96, ¶ 5, 16 P.3d 1230).
¶ 12 The Helmses present three legal challenges to the trial court's denial of their motion to dismiss Gunderman's complaint. First, the Helmses challenge the trial court's ruling that, under the Adoption Statute, Gunderman was entitled to notice of the adoption proceedings. "The interpretation of a statute... presents a question of law, which this court reviews for correctness." Parks v. Utah Transit Auth., 2002 UT 55, ¶ 4, 53 P.3d 473.
¶ 13 Second, the Helmses challenge the trial court's ruling that Gunderman consented to the adoption under duress. Whether duress existed and was sufficient to void consent is a mixed question of law and fact, and "we will not set aside the [trial] court's factual findings unless they are clearly erroneous.... The articulation of the proper legal standard ..., however, is a question of law which is reviewed for correctness." In re Estate of Beesley, 883 P.2d 1343, 1347 (Utah 1994).
¶ 14 Third, the Helmses challenge the trial court's amended duress analysis, which applied the notice requirements of the Jurisdiction Act to determine whether Gunderman consented under duress. This is a question of law that we review for correctness. See Parks, 2002 UT 55 at ¶ 4, 53 P.3d 473.

II. The Trial Court's Failure to Hold a Hearing on the Children's Best Interests
¶ 15 The Helmses challenge the failure of the trial court to conduct a best interest hearing for the children, pursuant to the Adoption Statute, see Utah Code Ann. § 78-30-4.16(2) (2000), after dismissing their adoption petition. The trial court interpreted the Adoption Statute not to require a best interest *1025 hearing under the circumstances of this case. The trial court's interpretation of a statute is a question of law that we review for correctness. See Parks, 2002 UT 55 at ¶ 4, 53 P.3d 473.

ANALYSIS

I. Helmses' Motion to Dismiss Gunderman's Complaint
¶ 16 The Helmses filed a motion to dismiss arguing that Gunderman did not have standing to intervene because of her consent to the adoption.[2] The trial court denied the Helmses' motion to dismiss on the bases that they failed to comply with the notice requirements contained in the Jurisdiction Act[3] and in the Adoption Statute, and that Gunderman consented to the adoption under duress.

A. Notice Requirements Under the Adoption Statute
¶ 17 The Adoption Statute provides that "[n]otice of an adoption proceeding shall be served on ... (a) any person ... whose consent or relinquishment is required under Section 78-30-4.14[4] unless that right has been terminated by waiver, relinquishment, consent, or judicial action." Utah Code Ann. § 78-30-4.13(2) (2000). The trial court concluded that because the Helmses did not serve notice upon Gunderman, the children's mother, they did not strictly comply with the requirements of section 78-30-4.13. Then, the trial court ruled that it could "`enjoin the adoption, or dismiss the adoption petition.'" (Quoting Utah Code Ann. § 78-30-4.16.)
¶ 18 The trial court's determination that the Helmses failed to strictly comply with the notice requirements of the Adoption Statute ignores the statute's express language indicating that a person otherwise entitled to notice may "terminate[ ]" that right "by ... consent." Utah Code Ann. § 78-30-4.13(2). In this case, Gunderman signed a consent. Her right to notice was "terminated," id., and the Helmses did not fail to strictly comply with the notice requirements of section 78-30-4.13. See In re Baby Boy Doe, 894 P.2d 1285, 1287 (Utah Ct.App.1995) ("[B]ecause her rights had already been terminated by her consent ..., [the adoptee's mother] was not entitled to notice." (Citing Utah Code Ann. § 78-30-4.7, which has since been repealed and reenacted as section 78-30-4.13(2).)). Thus, we must reach the issue of the validity of Gunderman's consent. In particular, we must determine whether the trial court was correct in its "articulation [and application] of the proper legal standard" for determining duress. In re Estate of Beesley, 883 P.2d 1343, 1347 (Utah 1994).

B. Consent and Duress
¶ 19 A parent's consent to adoption is irrevocable in Utah, see Utah Code Ann. § 78-30-4.20 (2001), unless the parent can show that the consent "was not entered into voluntarily but was induced through duress, undue influence, or under some misrepresentation or deception; or other grounds which would justify release from the obligations of any contract." In re S., 572 P.2d 1370, 1374 (Utah 1977).
*1026 ¶ 20 In Andreini v. Hultgren, 860 P.2d 916 (Utah 1993), the Utah Supreme Court defined duress as an independent legal concept. It adopted the Restatement (Second) of Contracts' three-part standard for determining duress.[5] Under that legal standard, a "contract is voidable by the victim" "[i]f ... assent is induced [ (1) ] by an improper threat [ (2) ] by the other party [ (3) ] that leaves the victim no reasonable alternative." Restatement (Second) of Contracts § 175 (1981); see Andreini, 860 P.2d at 921 (adopting Restatement's view of duress).
¶ 21 But here, the trial court articulated a different legal standard, stating:
Utah cases are in line with other jurisdictions in holding that where most of the circumstances surrounding the signing of consent point to duress and undue influence, the court will allow revocation of consent. [D.P. v. Social Service, 19 Utah 2d 311, 431 P.2d 547 (1967)]. Persuasion alone, intense emotion at the time of signing alone, misunderstanding about the finality of consent alone, financial or marital difficulties or promises alone, and even being medicated at the time of signing alone is not enough to justify setting aside the consent. Each case must be decided on its own facts, and all of the circumstances surrounding the signing of consent must converge to show that the consent was given under duress and undue influence. See [D.P., 431 P.2d at 551]; [In re Adoption of Infant Anonymous, 760 P.2d 916 (Utah Ct.App.1988) ]; [In re Adoption of D., 122 Utah 525, 252 P.2d 223, 227 (1953)].
The trial court then relied on In re Adoption of D., 252 P.2d at 227, to provide a list of factors to be considered in determining whether duress existed. Those factors include (1) the circumstances under which the child was placed for adoption; (2) the circumstances under which the parent consented to the adoption; (3) the length of time the children have lived with the adoptive parents; (4) whether any vested rights have intervened; (5) the best interests of the children; (6) the conduct, character, and ability of the respective claimants; and (7) the governing statute. See id. The trial court analyzed the evidence relating to each of these factors and concluded that the facts of this case "converge to establish duress, undue influence, and mistaken belief at the time [Gunderman] signed her consent."
¶ 22 We conclude that the trial court erred in its articulation of the legal standard for determining duress. The factors the trial court analyzed were found in a case nearly fifty years old, which long predates both the current Adoption Statute and the legal standard set forth in Andreini. The seven factors found in In re Adoption of D. cannot be reconciled with Andreini's three elements. The trial court's incorrect legal standard relied on a subjective balancing test, whereas the correct legal standard is an objective test. The Andreini standard looks more to the actions of others and to the "reasonable alternative[s]" available to the alleged victim than to her subjective psychological stress. Andreini, 860 P.2d at 921. Accordingly, we conclude that the court committed reversible error when it utilized an erroneous legal standard as the basis for its ruling. Thus, the case must be remanded for a duress hearing that applies the correct legal standard.
¶ 23 Additionally, the trial court failed to recognize and apply the proper evidentiary burden required to prove duress and to revoke a consent to adoption. Although Utah case law has not addressed the narrow issue of the burden of proof in consent to adoption cases, other Utah case law requires clear and convincing evidence to prove duress, undue influence, fraud, and mistake. See Reliable Furniture Co. v. American Home Assurance Co., 24 Utah 2d 93, 466 P.2d 368, 370 (1970) (applying clear and convincing standard in cases of duress); Walker Bank & Trust Co. v. Walker, 17 Utah 2d 390, 412 P.2d 920, 921 (1966) (questioning whether trial court correctly found "evidence of a clear and convincing nature" of undue influence in execution of deed); West One Trust Co. v. Morrison, 861 P.2d 1058, 1061 (Utah Ct.App.1993) (applying clear and convincing evidence standard to *1027 questions of mutual mistake in formation of contracts, and stating it applies in cases of "`fraud, duress, undue influence, mistake, incapacity, or other infirmity that in equity and good conscience [the contract] should not be enforced'" (quoting Pagano v. Walker, 539 P.2d 452, 454 (Utah 1975))).
¶ 24 Moreover, the weight of authority from other jurisdictions also requires clear and convincing evidence in consent to adoption cases. See In re Navajo County Juvenile Action No. JA-691, 171 Ariz. 369, 831 P.2d 368, 375 (App.1991); K.C. v. Adoption Servs., Inc., 721 So.2d 811, 812 (Fla.Dist.Ct.App.1998); In re Female Child by Doe, 85 Hawai`i 165, 938 P.2d 1184, 1190 (App.1997); see also In re Adoption of Hiatt, 69 Wyo. 373, 242 P.2d 214, 216 (1952) (applying clear and convincing standard of proof to cases involving consent procured by fraud). Further, counsel for both parties agreed during oral arguments that Utah law requires clear and convincing evidence to prove duress in consent to adoption cases.
¶ 25 Finally, this burden of proof is consistent with our strict application of the Adoption Statute. See In re Adoption of S.L.F., 2001 UT App 183, ¶ 17, 27 P.3d 583 (holding strict adherence to Adoption Statute critical to validity of adoption); see also Utah Code Ann. § 78-30-4.20 (making consent to adoption irrevocable).
¶ 26 Accordingly, we conclude that a party asserting duress must prove the elements justifying revocation of consent to adoption by clear and convincing evidence, and on remand the trial court should also utilize the proper burden of proof in weighing the sufficiency of the evidence of duress.

C. The Jurisdiction Act
¶ 27 As further support for its duress ruling, the trial court's amended memorandum decision added analysis of the Jurisdiction Act's notice requirements, found in Utah Code Ann. § 78-45c-205 (2001). Thus, it decided that this adoption proceeding was within the purview of the Jurisdiction Act. Then, it ruled that the Helmses had not complied with the Act's notice requirements because Dillon placed the children for adoption without Gunderman's knowledge, and because Gunderman consented to the adoption under duress.
¶ 28 The Jurisdiction Act applies to "child custody proceedings," defined as
proceeding[s] in which legal custody, physical custody, or visitation with respect to a child is an issue. The term includes a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from domestic violence, in which the issue may appear.
Utah Code Ann. § 78-45c-102(4) (2000). However, the Jurisdiction Act particularly excludes adoption proceedings from its purview. See id. § 78-45c-103 (stating that the Jurisdiction Act "does not govern ... an adoption proceeding").
¶ 29 Despite this plain statutory provision, the court stated
[i]t is true [the Jurisdiction Act] does not apply to adoptions, but this was also a motion to award custody before the adoptions went forward. It is unpersuasive to style this case as an adoption to avoid the [Jurisdiction Act]'s requirements regarding foreign custody decrees when the children's custody was being changed without both joint custodial parents' participation.
Further, the court stated that the Helmses "confuse[d] the separate issues of adoption and custody" by filing a Petition for Temporary Custody with the Adoption Petition. However, the trial court did not articulate why it found the "styl[ing]" of this case as an adoption legally improper. Nor did it provide any legal basis to contradict the clear language of the two statutes. Thus, we are not persuaded that this was a "custody proceeding" under the Jurisdiction Act. Rather, it was an adoption proceeding, rendering the Jurisdiction Act inapplicable.
¶ 30 Under the Adoption Statute, "once a petitioner has received the adoptee into his home and a petition for adoption has been filed, the petitioner is entitled to the custody and control of the adoptee and is responsible for the care, maintenance, and support of the adoptee, ... pending further order of the court." Utah Code Ann. § 78-30-4.22 (2000). Thus, a temporary custody determination *1028 becomes a necessary concomitant of most adoptions, until the adoption is granted.
¶ 31 In this case, the Helmses received the children into their home from the custodial parent for the purpose of adopting them and then filed an adoption petition with a temporary custody petition. The trial court made a distinction between "the separate issues of adoption and custody." However, this distinction is illusory because pursuant to the Adoption Statute, the Helmses had a right to temporary custody pending the final disposition of the adoption. The Helmses' only purpose in petitioning for temporary custody was to obtain that right. Thus, the temporary custody petition was subsumed within the adoption proceeding. Accordingly, the trial court erred in its legal conclusions that the Jurisdiction Act controls this adoption petition, that Gunderman was entitled to notice under the Jurisdiction Act, and that the lack of notice under the Jurisdiction Act is an appropriate consideration in determining whether Gunderman's consent was procured through duress.

II. Best Interests Custody Hearing for the Children (Judge Jackson's minority opinion due to separate opinions filed by Judge Greenwood and Judge Thorne)
¶ 32 Due to the trial court's legal errors identified above, this case must be remanded for application of the proper legal standard for duress, together with weighing the evidence of duress with a clear and convincing burden of proof. If after doing so the trial court rules that Gunderman consented under duress, then the Adoption Statute provides that the trial court may "enjoin the adoption, or dismiss the adoption petition." Utah Code Ann. 78-30-4.16(1)(a) (2000). The court may also "determine whether proper grounds for termination of [Gunderman's] rights exist and, if so, order that [her] rights be terminated in accordance with the provisions of this chapter or Title 78, Chapter 3a, Part 4, Termination of Parental Rights Act." Utah Code Ann. 78-30-4.16(1)(b).
¶ 33 However, if the trial court does not grant the adoption, I would hold that it must conduct a hearing devoted to the best interests of the children, pursuant to the express provisions of the Adoption Statute, which provides:

In any case and under any circumstance, if a court determines that a petition for adoption may not be granted, the court may not automatically grant custody of the child to a challenging biological parent, but shall conduct an evidentiary hearing in each case, in order to determine who should have custody of the child, in accordance with the child's best interest.
Utah Code Ann. § 78-30-4.16(2) (2000) (emphasis added). The trial court's automatic award of child custody to Gunderman after dismissing the Helmses' adoption petition, was in direct contravention of the plain language of section 78-30-4.16(2).[6]
¶ 34 Nevertheless, Gunderman argues that no children's best interest hearing is needed for two reasons. First, the legislative intent of the language in section 78-30-4.16(2) contemplated only those circumstances where the children never knew their biological parents and would be taken from the only parents they ever knew.[7] "When we interpret a *1029 statute, we look first to its plain language; only if the statute's language is ambiguous do we rely on other methods of statutory interpretation." Toone v. Weber County, 2002 UT 103, ¶ 12, 57 P.3d 1079. Gunderman does not argue that section 78-30-4.16(2) is ambiguous, but she first employs methods of statutory interpretation based on ambiguity and does not look to the statute's plain language. I find nothing ambiguous about the phrase "[i]n any case, and under any circumstance." Utah Code Ann. § 78-30-4.16(2). It requires a hearing in any and all cases and under any and all circumstances. Accordingly, I am not persuaded that, because the circumstances of this case may differ from others, the trial court does not need to conduct a custody hearing to determine the children's best interests pursuant to section 78-30-4.16(2). The statute contemplates "any circumstance" in "any case." Id. Thus, the trial court is required to hold a best interests custody hearing after it has decided to dismiss an adoption petition, not before.
¶ 35 Further, sound public policy underlies this inclusive requirement that a hearing devoted to the children's best interests be held after an adoption petition is dismissed. Whenever children have been placed by parents with third parties for adoption, a legitimate concern is raised regarding the nature and extent of the parents' ongoing interest in caring for the children. Accordingly, the children should not be returned to the parents sua sponte. Rather, the parents' interest in caring for the children and their ability to do so must be given serious scrutiny.
¶ 36 Second, Gunderman argues that a child custody hearing based on the children's best interests would contravene the presumption that parental custody is in the children's best interests. See Hutchison v. Hutchison, 649 P.2d 38, 40 (Utah 1982) ("In a controversy over custody, the paramount consideration is the best interest of the child, but where one party to the controversy is a nonparent, there is a presumption in favor of the natural parent."). I disagree. The parental presumption plays a central role in custody determinations, see id., but "[t]he [p]arental [p]resumption is not conclusive." Id. at 41. The parental presumption
can be rebutted only by evidence establishing that a particular parent at a particular time generally lacks all three of the characteristics that give rise to the presumption: that no strong mutual bond exists, that the parent has not demonstrated a willingness to sacrifice his or her own interest and welfare for the child's, and that the parent lacks the sympathy for and understanding of the child that is characteristic of parents generally.[8]
Id. An automatic child custody award, given without allowing the Helmses the opportunity to rebut the parental presumption, would render the rebuttable presumption irrebutable. However, holding a child custody hearing would give effect both to the plain language of section 78-30-4.16(2) and to the presumption that Gunderman's custody of the children is in their best interests. The children's best interests are of paramount importance. See In re J.P., 648 P.2d 1364, 1367 (Utah 1982) (discussing relationship between parental rights and "`paramount'" consideration of children's best interests) (quoting In re Jennings, 20 Utah 2d 50, 432 P.2d 879, 880 (1967)). Thus far, the proceedings have focused on legal issues between the adult parties rather than the welfare of the children. The children have not had their "day in court," nor have they had representation by attorney or guardian ad litem. Accordingly, I would reverse and remand with the following direction to the trial court: If the trial court invalidates Gunderman's consent based on duress under the correct legal standard, then it must conduct a children's best interests custody hearing in accord with *1030 the Adoption Statute. If the trial court does not invalidate the consent based on duress under the correct legal standard, then it must dismiss Gunderman's Complaint in Intervention and proceed with the adoption pursuant to the Adoption Statute.

CONCLUSION
¶ 37 The trial court erred in articulating and applying an incorrect legal standard to determine whether Gunderman consented under duress. It also erred in ruling that the Jurisdiction Act applied to this case. Thus, the issue of duress is remanded for a new duress hearing based on the opinions of Judge Jackson and Judge Greenwood. Based on the opinions of Judge Thorne and Judge Greenwood, the trial court did not commit reversible error in awarding child custody to Gunderman without holding the statutory best interests of the children hearing after it dismissed the adoption petition. Thus, no further best interests of the children hearing is required.
¶ 38 Reversed and remanded for further proceedings consistent with our opinions.
GREENWOOD, Judge (concurring and dissenting):
¶ 39 I concur with Judge Jackson's opinion except for the remand for a best interest hearing. In that respect, I agree with Judge Thorne's dissenting opinion. I write to express a third view in this case that presents troubling facts and difficult legal issues.
¶ 40 I agree with Judge Jackson that the duress standard articulated in Andreini v. Hultgren, 860 P.2d 916 (Utah 1993), must be applied. Even before Andreini, the Utah Supreme Court stated that contract principles are applicable in a proceeding to revoke consent to adoption when duress is alleged. See In re S., 572 P.2d 1370, 1374 (Utah 1977) (citing In re Adoption of F., 26 Utah 2d 255, 259-60, 488 P.2d 130, 132-33 (1971)). Both of these cases were decided after In re Adoption of D., 122 Utah 525, 252 P.2d 223 (1953), relied on by the trial court.[1] Consequently, Andreini is binding precedent from the Utah Supreme Court. I therefore reluctantly agree that the trial court, on remand, should reexamine the findings of fact it previously entered, to determine if the three part Andreini test is met. My reluctance stems from the extensive findings of fact already entered and detailed in Judge Thorne's dissenting opinion. In my view, the findings come very close to establishing duress as a matter of law. However, I defer to the trial court, having heard and observed the witnesses, to make that determination.
¶ 41 I am in agreement with Judge Thorne that remanding for a best interest hearing is unnecessary. On page 49 of the trial court's Amended Findings of Fact, Conclusions of Law and Order, the court addresses the children's best interest under the heading, "The Welfare of the Child." In this section, the trial court states that the evidence was insufficient to persuade it that Mother "had failed to give her children the attention and love they need or has been unwilling or unable to care for them." The trial court further states "that because [Mother] has been and is now willing and able to care for the children and meet their needs, the best interests of the children will best be served by being in the custody of their natural mother." There is further detail in the court's findings that supports this conclusion. Thus, the court conducted an "evidentiary hearing" and "determine[d] who should have custody of the child[ren], in accordance with the child[ren]'s best interest." Utah Code Ann. § 78-30-4.16(2)(a) (2002). Furthermore, section 78-30-4.16(2)(a) does not require a separate or subsequent best interest hearing. Thus, the statute does not preclude holding only one evidentiary hearing, from which the trial court may determine both if the adoption petition should be granted and what is in the child's best interest.
¶ 42 Lastly, I am in agreement with Judge Thorne that the legislature may wish to reexamine the requirement of a best interest hearing in cases such as this. Here, Mother *1031 sought to revoke her consent, claiming duress, within two months of signing the consent. Her children, who were not infants, could have been quickly restored to her, except for the proceedings and trial that followed. This is quite unlike the nationally reported cases that may have prompted the legislature to adopt this statute, where children had been in adoptive homes for years and then were uprooted after lengthy court proceedings by a natural parent who may have been deceived or deprived of notice in some manner. Under the current statute, Mother would have to compete with a couple who had custody of her children for only a few months, to establish that the children would be best served by restoring custody to her. This burden would fall on Mother despite the fact that no court had determined that she was in any way unfit. In In re Adoption of B.O., 927 P.2d 202 (Utah Ct.App.1996), this court observed that both the United States Supreme Court and the Utah Supreme Court have held that "an involuntary termination of parental rights, based solely on a showing of the best interest of the child, [is] violative of a [biological parent's] constitutionally protected parental rights." Id. at 207 (citing Santosky v. Kramer, 455 U.S. 745, 753-55, 102 S.Ct. 1388, 1394-95, 71 L.Ed.2d 599 (1982); In re J.P., 648 P.2d 1364, 1372-74 (Utah 1982)). The court further observed, however, that "`the state, as parens patriae, has the authority and obligation to assume a parental role after the natural parent has been shown to be unfit or dysfunctional; and that parental prerogatives cannot, at that extreme point, frustrate the state in discharging its duty.'" Id. at 208 (quoting J.P., 648 P.2d at 1377). I hope these observations may be helpful to the legislature in considering refinements to section 78-30-4.16 and in the difficult task of establishing policy balancing the interests of children and parents.
THORNE, Judge (dissenting):
¶ 43 For the following reasons, I respectfully dissent. First, I disagree with Judge Jackson's claim that Gunderman needed to intervene in this action to contest the adoption. In re Baby Boy Doe, 894 P.2d 1285 (Utah Ct.App.1995), directs that Gunderman's motion to revoke her consent should have been characterized as a rule 60(b) motion under the Utah Rules of Civil Procedure. See In re Baby Boy Doe, 894 P.2d at 1288. Furthermore, Judge Jackson's treatment of Gunderman's motion seems to require the court to evaluate the merits of Gunderman's claim of duress prior to having jurisdiction over her claim. Finally, while I agree that a best interest hearing is required, my reading of the record, as well as the trial court's order, suggest that the trial court fully addressed the children's best interests prior to returning them to the care of their mother. Therefore, any error in failing to hold a separate hearing was harmless.
¶ 44 First, I disagree with Judge Jackson's conclusion that Gunderman must intervene to attack the validity of her purported consent. In Baby Boy Doe, a mother appealed the denial of her motion to dismiss an adoption petition on the grounds that she had been persuaded to consent to the adoption against her will. See id. at 1286. The mother sought a hearing on her motion under Utah Code Ann. section 78-30-4.10 (1992).[1]See Baby Boy Doe, 894 P.2d at 1286. The supreme court reasoned that section 78-30-4.10 only applied to persons who had been "`served with a notice of the adoption proceeding.'" Id. at 1287 (citation omitted). The supreme court further reasoned that the mother had waived her right to notice and, therefore, she did not fall within the ambit of the statute. See id. at 1287-88. Thus, the court concluded, the mother could not pursue that avenue of relief. See id. However, the court stated that the mother
was not left without a remedy in challenging the validity of her consent. Rule 60(b) *1032 of the Utah Rules of Civil Procedure provides that "[o]n motion and upon such terms as are just, the court may in the furtherance of justice relieve a party ... from a final judgment, order, or proceeding for the following reasons: .... (3) fraud ..., misrepresentation or other misconduct of an adverse party." [The mother] has alleged misrepresentation by the adoptive parents as grounds for invalidating the consent order of June 4. Thus, we treat [the mother's] motion to dismiss the petition as a[r]ule 60(b) motion.
Id. (footnote and citation omitted.) Relying on State v. Parker, the trial court reasoned that the fact that the moving party did not label his motion a rule 60(b) motion was not dispositive. "In determining the character of a motion, the substance of the motion, not its caption, is controlling." Baby Boy Doe, 894 P.2d at 1288 (quoting State v. Parker, 872 P.2d 1041, 1044 (Utah Ct.App.1994)).[2]
¶ 45 In similar fashion, I would characterize Gunderman's attack upon the validity of her purported consent as a rule 60(b) motion.[3] Here, Gunderman alleged that she signed the purported consent under duress, which would place her request for relief squarely within rule 60(b)(3). The trial court heard testimony concerning the execution of the purported consent document and concluded that it had been signed under duress. "A trial court is afforded broad discretion in ruling on a motion for relief from judgment under [rule] 60(b), and its determination will not be disturbed absent an abuse of discretion." Birch v. Birch, 771 P.2d 1114, 1117 (Utah Ct.App.1989).[4]
¶ 46 In finding duress, the trial court made the following factual findings:[5] (1) Without Gunderman's consent and without informing Gunderman of where he was taking the children, Gunderman's former husband removed the three children from Nevada, in violation of Nevada law, and transported them to Utah;[6] (2) on February 6, 2001, the Helmses *1033 filed a petition for adoption and claimed that consent from the mother would be provided shortly; (3) Gunderman's former husband had initially offered her one-thousand dollars in cash and the title to a car for her consent to the adoption; (4) after she balked, he then attempted to convince her that she was an unfit mother, and threatened to publically expose certain private information if she refused to sign; (5) he also offered to reconcile with her if she would consent to the adoption; (6) when finally permitted by her former husband to visit her children, Gunderman was subjected to additional pressure from her former husband's family who made a concerted effort to convince her to consent to the adoption; (7) after she rebuffed each of these efforts, the Helmses' began to contact her directly in an attempt to convince her to consent to the adoption, including speaking with Gunderman or her former husband twenty-four times over the course of four days. One of these calls lasted nearly two-hours and involved Gunderman, the Helmses, and Gunderman's former husband, and featured a threat from the Helmses that Gunderman's children would be placed in foster careas Gunderman herself was growing upif she refused to consent; (8) Gunderman's former husband drove her to the commissioner's office, where she refused to go inside, which prompted him to ask the commissioner to come to the car to talk with her. There, after a brief conversation, the commissioner concluded that Gunderman was unwilling to consent to the adoption; (9) Gunderman attempted to drive from Nevada to Utah to retrieve her children, but her night blindness prevented her from successfully achieving this goal. The next day, Gunderman's former husband took her car to prevent her from further, similar attempts; (10) after this attempt, the Helmses repeated their threat to condemn the children to a life in foster care if Gunderman refused to consent; (11) Gunderman's former husband again drove her to the commissioner's office on March 22, 2001, and told her she was going to consent to the adoption, "or else." This threat and other pressure, prompted a "very emotional and crying" Gunderman to sign the consent. However, because Gunderman had purposefully left her identification at home, the document was not notarized; (12) after signing the document, the Helmses denied Gunderman any access to the children, and suspecting that the original consent may be invalid, the Helmses told Gunderman that if she wanted to see her children again she would sign a consent in front of a judge and cooperate with the notarization. Gunderman initially agreed, but when she found herself in front of the judge, she was unable to sign the consent. Instead, she told the judge that she did not want to consent to the adoption of her children; (13) on March 22, 2001, the Helmses filed Gunderman's consent with the court; and (14) on May 3, 2001, Gunderman filed her motion entitled: "Revocation of Consent to Adoption and Relinquishment of Parental Rights by Natural Mother."
¶ 47 Based upon these findings, I would conclude that the trial court, in the exercise of its equitable discretion under rule 60(b), acted within its permitted range of discretion in concluding that the consent was a product of duress. Having concluded that duress tainted the purported consent, the court properly allowed Gunderman to withdraw her "consent."
¶ 48 In summary, I disagree with the procedure outlined by Judge Jackson for attacking the validity of a consent. Here, Gunderman filed a motion that Judge Jackson characterizes as a motion to intervene. Judge Jackson proposes that, on remand, Gunderman can intervene only if the trial court evaluates the merits of her claim and determines that her consent was given under duress.
¶ 49 I disagree. The trial court has no jurisdiction over Gunderman before she intervenes. See Ostler v. Buhler, 1999 UT 99, ¶ 7, 989 P.2d 1073 (noting that "non-parties must adhere to the procedural requirements of Rule 24(c) in order to intervene in an action"); Openshaw v. Openshaw, 80 Utah 9, 12 P.2d 364, 365 (1932) (stating that "[a] decree in favor of a person who is not a party to the action or proceeding is void because the court has no jurisdiction to make it"). I cannot support Judge Jackson's approach because it allows the trial court to rule on the *1034 merits of Gunderman's consent without first acquiring jurisdiction over her claim.[7]
¶ 50 While I believe we should affirm the trial court's decision, if remand is necessary I agree with Judge Greenwood that no new hearing is required and the trial court should simply "re-examine the findings of fact previously entered, to determine if the three-part Andreini test is met." See Andreini v. Hultgren, 860 P.2d 916, 921 (Utah 1993). However, because credibility determinations are inherent in the application of the Andreini test, and because Judge Hansen heard the witnesses and made the initial factual findings, I believe the case should be remanded to him for application of the Andreini test.
¶ 51 Finally, while I agree with the majority's conclusion that a best interest hearing is required "[i]n any case, and under any circumstance, if the court determines that a petition for adoption may not be granted," Utah Code Ann. § 78-30-4.16, in this case I believe that the trial court's failure to hold a separate hearing was harmless.[8]See In re C.Y., 765 P.2d 251, 254 (Utah Ct.App.1988) ("The pivotal question is whether the error resulted in prejudice sufficient to warrant reversal of the ... order. An error is prejudicial `only if a review of the record persuades the [appellate] court that without the error there was "a reasonable likelihood of a more favorable result ...."'" (alterations in original) (citations omitted)).
¶ 52 The trial court, in its order, clearly considered the children's best interest prior to restoring them to their mother. Over the course of two full pages, the court found that "returning the children to their natural parents will not be detrimental to their welfare" and that Gunderman was "capable of giving the child[ren] the attention and love they need." The trial court was also "not persuaded that [Gunderman] had a substantial drug problem or that [she] was unwilling or unable to fulfill her parental responsibilities." The court further found that Gunderman has been willing and able to care for her children's needs, and that "the best interest of the children will best be served by being in the custody of their natural mother." I would, therefore, conclude that the trial court fully considered the children's best interest prior to restoring them to Gunderman, and that the failure to conduct a separate best interest hearing was, thus, harmless.
¶ 53 Accordingly, I respectfully dissent from the majority[9] opinion and would affirm the trial court order.
NOTES
[1] The decree provided that if either party

intends to move their residence to a place outside the State of Nevada and take the minor children with them, they must as soon as possible, and before the planned move, attempt to obtain the written consent of the non-custodial parent to move the minor children from the State. If the non-custodial parent refuses to give that consent, the custodial parent shall, before they leave the state with the child, petition the Court for permission to move the child. The failure of a parent to comply with the provision of this section may be considered as a factor if a change of custody is requested by the non-custodial parent. This provision does not apply to vacations outside the State of Nevada....
[2] Rule 24 of the Utah Rules of Civil Procedure provides that a party must be granted standing to intervene as of right "(1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action...." Utah R. Civ. P. 24(a).

If Gunderman's consent was valid, i.e., not given under duress, then section 78-30-4.13 of the Adoption Statute does not grant her a right to intervene, because her "parental rights were terminated by her consent" as discussed below. In re Baby Boy Doe, 894 P.2d 1285, 1287 (Utah Ct.App.1995); see Utah Code Ann. § 78-30-4.13 (2000). Thus, a valid consent would divest her of any "interest" in "the subject of the action." Utah R. Civ. P. 24(a). Accordingly, Gunderman will not be entitled to intervene under rule 24(a)(2) if on remand the trial court determines there was no duress.
[3] The trial court referred to the Uniform Child Custody Jurisdiction Act (UCCJA). We assume the trial court meant the Utah Uniform Child Custody Jurisdiction and Enforcement Act (UUCCJEA), which replaced the UCCJA in July 2000. See Utah Code Ann. § 78-45c-101 (2000). Accordingly, our analysis will proceed under the UUCCJEA.
[4] Section 78-30-4.14 requires the consent of both parents. See Utah Code Ann. § 78-30-4.14(1)(b) (2001). Dillon duly consented to the adoption and is not a party to this proceeding.
[5] Utah case law has repeatedly analogized the legal principles surrounding consent to adoption to those involved in general contract law. See, e.g., In re S., 572 P.2d 1370, 1374 (Utah 1977).
[6] Judge Thorne's opinion invokes rule 60(b) factual analysis sua sponte, see Utah R. Civ. P. 60(b), weighs the trial court's factual findings and concludes on the facts that the trial court "fully considered the children's best interest." However, Gunderman has not appealed, and the Helmses have raised no factual issues on appeal. Moreover, the trial court stated that "a full blown best interest analysis was not undertaken as normally seen in a child custody case." (Emphasis added.) The evidence in the duress hearing was limited to that which related, directly or indirectly, to the nature and extent of Gunderman's duress when she signed her consent. Further, the trial court received evidence relating to the children's best interests only as it related to one of seven duress factors, and it did so as it applied an erroneous legal standard for duress. Assuming rule 60(b) analysis is the proper means to dispose of the legal issues raised by appellant, the legal errors that permeated the proceedings do not engender confidence in me that the outcome was harmless to the children.
[7] Gunderman also argues that a best interests of the children hearing is unnecessary because she had joint legal custody of the children. However, Gunderman offers no legal authority or analysis supporting the proposition that her joint legal custody could obviate the need for the statutorily required best interests of the children hearing.
[8] Utah Code Ann. § 78-30-4.16(2)(b) (2000) lists evidence that may be considered during the custody hearing to determine the children's best interests if the parental presumption is successfully rebutted:

Evidence considered at that hearing may include, but is not limited to, evidence of psychological or emotional bonds that the child had formed with third parties and any detriment that a change in custody may cause to the child. The fact that a person ... executed a consent for adoption may not be considered by the court as evidence of neglect or abandonment.
Id.
[1] In my view, the Andreini standard applies regardless of whether the issue of duress is raised by a motion to intervene or a rule 60(b) motion. See Utah R. Civ. P. 60. However, the standard of review we apply may differ depending on the type of motion.
[1] The statute in force at the relevant time provided that

[a]ny person who has been served with a notice of the adoption proceeding and who wishes to contest the adoption on any ground set forth in this section [including contesting the validity of consent or relinquishment to the adoption] shall file a motion in the adoption proceeding within 30 days of service. The court shall set a hearing no less than 21 days from service on all adverse parties to the motion....
Utah Code Ann. § 78-30-4.10 (1992).
[2] The mother in In re Baby Boy Doe, 894 P.2d 1285 (Utah Ct.App.1995), did not succeed with her rule 60(b) motion because it was found to be untimely. See id. at 1288. Unlike the mother in Baby Boy Doe, who sought to revoke her consent seven months after signing it, see id., in this case, Gunderman challenged the validity of her purported consent within six weeks of signing, thereby complying with the three-month time limit imposed by rule 60(b). See Utah R. Civ. P. 60(b) (stating that "the motion shall be made within a reasonable time and for reasons (1), (2), (3), or (4), not more than 3 months after the judgment, order, or proceeding was entered or taken").
[3] It is well settled that an appellate court may affirm the judgment appealed from "`if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action, and this is true even though such ground or theory is not urged or argued on appeal by appellee, was not raised in the lower court, and was not considered or passed on by the lower court.'"

Bailey v. Bayles, 2002 UT 58, ¶ 10, 52 P.3d 1158 (citations omitted).
[4] I disagree with Judge Greenwood's claim that the legal principle articulated in Andreini v. Hultgren, 860 P.2d 916 (Utah 1993), applies regardless of whether duress is raised through a motion to intervene or a rule 60(b) motion. Utah courts have long held that

"[t]he allowance of a vacation of judgment [pursuant to rule 60(b) ] is a creature of equity designed to relieve against harshness of enforcing a judgment, which may occur through procedural difficulties, the wrongs of the opposing party, or misfortunes which prevent the presentation of a claim or defense.... [A]n equity court..[.] may exercise wide judicial discretion in weighing the factors of fairness and public convenience, and this court on appeal will reverse the trial court only where an abuse of this discretion is clearly shown."
Boyce v. Boyce, 609 P.2d 928, 931 (Utah 1980) (quoting Warren v. Dixon Ranch Co., 123 Utah 416, 260 P.2d 741, 742-43 (1953)). Relief pursuant to rule 60(b) should be granted only "`when it appears that the processes of justice have been so completely thwarted or distorted as to persuade the court that in fairness and good conscience the judgment should not be permitted to stand.'" Id. (quoting Haner v. Haner, 13 Utah 2d 299, 373 P.2d 577, 578 (1962)).
Rule 60(b) relief is equitable, not legal, in nature. If we apply legal principles in this context, the purpose of the rule is undermined and its existence would be rendered pointless.
[5] The majority characterizes the Helmses' coercion of Gunderman in the following way: "Gunderman initially refused to give her consent to the adoption, but ultimately signed the consent form before the court appointed commissioner." The extensive and detailed factual findings of the trial court belie this broad generalization.
[6] Hiding the whereabouts of the children from Gunderman and taking them in violation of Nevada law is indicative of the pattern of behavior used to coerce Gunderman to sign a consent.
[7] Judge Jackson's approach also leaves unresolved many procedural questions. For example, it is unclear whether a "ruling" that a parental consent to adoption was valid would become res judicata and prevent further litigation on the matter. It is also unclear whether, if appealed, the appellate court would review the validity of the consent or whether the court would only review whether the parties complied with rule 24 of the Utah Rules of Civil Procedure. See Ostler v. Buhler, 1999 UT 99, ¶ 7, 989 P.2d 1073 (noting that "[r]ule 24(c) plainly sets forth the procedure to be followed by a non-party's wish to intervene").
[8] I agree with Judge Greenwood's concerns regarding the best interest hearing in this case and her conclusion that a parent's right to their children should be closely guarded. For this reason, I question the necessity of a best interest hearing under circumstances such as these where children are kidnaped and taken across state lines for the purpose of adoption. However, the plain language of the statute clearly requires such a hearing, even when there has been no prior judicial action to remove the children. While the parties do not challenge the constitutionality of this hearing, I agree with Judge Greenwood that requiring the hearing in every instance is constitutionally suspect. Like Judge Greenwood, I strongly recommend that the legislature carve out an exception for when there is no dispute that the children involved have been unlawfully separated from a legal parent or guardian and placed for adoption without that parent or guardian's voluntary and knowing consent.
[9] While precedent seems to direct Utah courts to evaluate the validity of a consent to adoption by utilizing principles of contract law, I believe this is the wrong approach. In matters as important as a parent relinquishing his or her fundamental right to raise their child, I believe courts should apply a higher standard than those used for business transactions. A better approach, in my opinion, would be the criminal law standard used to determine whether a defendant has made a knowing and voluntary waiver of a fundamental right.